PEOPLE v CHOWDHURY

Docket No. 288696. Submitted August 5, 2009, at Detroit. Decided
    September 10, 2009, at 9:00 a.m.

    Emran Chowdhury was charged in the 52-4 District Court with
    violating an ordinance of the city of Troy that prohibited posses-
    sion of alcoholic liquor by a person who is less than 21 years of age.
    The ordinance further provided (1) that a peace officer who had
    reasonable cause to believe that the minor consumed alcoholic
    liquor could require the minor to submit to a preliminary chemical
    breath analysis (PBT) for the presence of alcohol in the minor's
    body, (2) that the results of the PBT could form the basis of an
    arrest and be admitted in a criminal prosecution for a violation of
    the ordinance, and (3) that a minor who refused to take a PBT was
    responsible for a civil infraction. The defendant moved to suppress
    the results of the PBT, arguing that the ordinance was unconsti-
    tutional because it allowed a warrantless search in the absence of
    an exception to the warrant requirement. The district court,
    William E. Bolle, J., ruled that the ordinance was unconstitutional
    and suppressed the evidence obtained from the PBT. The city
    sought leave to appeal in the Oakland Circuit Court. The circuit
    court, Rae Lee Chabot, J., denied leave to appeal, and the city
    sought leave to appeal in the Court of Appeals.

        The Court of Appeals *held*:

        1. The PBT administered to the defendant constituted a search
    under the Fourth Amendment. Generally, searches or seizures
    conducted without a warrant are unreasonable per se, and evi-
    dence seized in violation of the Fourth Amendment prohibition of
    unreasonable searches and seizures must be excluded. A number
    of exceptions to the warrant requirement exist, but those excep-
    tions still require reasonableness and probable cause.

        2. Under the governmental "special needs" (or regulatory)
    exception, a warrant or probable cause is not required if the search
    meets reasonable legislative or administrative standards. There is
    nothing special in the need of law enforcement to detect evidence
    of ordinary criminal wrongdoing, however, and reasonableness
    generally requires obtaining a judicial warrant if the search is to

discover evidence of criminal wrongdoing. The special needs exception did not apply to this case.

3. The exigent circumstances exception to the warrant requirement provides that the police may search without a warrant in cases of actual emergency if there are specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect. No exigencies existed in this case that would have permitted a PBT search without a valid warrant. The city presented no evidence that the police officers could not have sought and obtained a warrant before dissipation of the defendant's bodily alcohol content and the consequent loss of evidence of illegal alcohol consumption. Nor did the city present evidence of any other exigent circumstances.

Affirmed.

1. CONSTITUTIONAL LAW — SEARCHES AND SEARCHES — MINORS IN POSSESSION OF ALCOHOL — PRELIMINARY BREATH TESTS.

An ordinance that authorizes a police officer to compel a minor to submit to a breath test for the presence of alcohol in the minor's body without a warrant, or in the absence of circumstances excusing the requirement of a search warrant, is unconstitutional on its face (US Const, Am IV).

2. SEARCHES AND SEIZURES — PRELIMINARY BREATH TESTS.

A preliminary chemical breath analysis for bodily alcohol content is a search within the meaning of the Fourth Amendment.

3. SEARCHES AND SEIZURES — FOURTH AMENDMENT — WARRANT REQUIREMENT — EXIGENT CIRCUMSTANCES.

The exigent circumstances exception to the search warrant requirement provides that a police officer may search without a warrant in cases of actual emergency if there are specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officer or others, or (3) prevent the escape of a suspect; the existence of exigent circumstances must be considered on a case-by-case basis.

*Lori Grigg Bluhm*, City Attorney, and *Allan T. Motzny*, Assistant City Attorney, for the plaintiff.

*Richard A. Levitt* for the defendant.

Before: STEPHENS, P.J., and JANSEN and WILDER, JJ.

PER CURIAM. Plaintiff, the city of Troy (City), appeals by leave granted the circuit court's denial of leave to appeal, which allowed to stand the district court's order striking down a City ordinance and suppressing certain evidence collected from defendant during a preliminary breath test (PBT). Having found no error in the district court's ruling or the circuit court's denial of leave to appeal, we now affirm.

I

A number of young adults under 21 years of age were allegedly drinking alcoholic beverages at a house party in the City. Police officers responded to a call and arrived to find a group of individuals leaving the party on foot. The officers detained the group of young adults, which included defendant. An officer asked each of the young adults whether he or she had been drinking alcohol. Some of the young adults indicated that they had been drinking, and others indicated that they had not. The officer divided the young adults into two smaller groups, separating those who admitted that they had been drinking from those who denied drinking at the party. The officers then proceeded to administer PBTs to the young adults. One of the officers administered a PBT to defendant, which resulted in a reading of "0.025." It is undisputed that the officer did not request defendant's consent before administering the PBT. Neither that particular officer, nor any other officer, obtained a search warrant before administering the PBTs.

The City ordinance at issue in this case, Troy Ordinance § 98.10.03, provides in relevant part:

> A person less than 21 years of age shall not purchase or attempt to purchase alcoholic liquor, consume or attempt

to consume alcoholic liquor, or possess or attempt to possess alcoholic liquor. A person who violates this section is guilty of a misdemeanor . . . .

\* \* \*

A peace officer who has reasonable cause to believe a person less than 21 years of age has consumed alcoholic liquor may require the person to submit to a preliminary chemical breath analysis. A peace officer may arrest a person based in whole or in part upon the results of a preliminary chemical breath analysis. The results of a preliminary chemical breath analysis or other acceptable blood alcohol test are admissible in a criminal prosecution to determine whether the minor has consumed or possessed alcoholic liquor.

Furthermore, Troy Ordinance § 98.10.04 provides in relevant part that a "person less than 21 years of age who refuses to submit to a preliminary chemical breath analysis . . . is responsible for a civil infraction and may be ordered to pay a civil fine of not more than $100.00."

Defendant testified before the district court that the officers had indicated that he and the others were required take a PBT. According to defendant and other witnesses, the officers informed the young adults that they would be taken to the police station—and possibly go to jail—if they did not comply by submitting to the PBTs. Defendant testified that he believed that he had no choice but to submit to the PBT. Defendant and other witnesses stated that the officers had been aggressive and had used profane language toward the young adults. Defendant testified that he had felt intimidated and that he had therefore submitted to the PBT without objecting and without asking any questions of the officers.

After having been charged with violating Troy Ordinance § 98-10-03, defendant moved in the district court

to suppress the results of the PBT. Defendant argued that the ordinance was unconstitutional because it purported to allow a police officer to perform a warrantless search, because warrantless searches are generally considered unreasonable unless an exception applies, and because no exception to the warrant requirement was applicable in this case. In support of his position, defendant cited two cases in which the United States District Court for the Eastern District of Michigan had ruled that a similarly worded ordinance and a similarly worded state statute were unconstitutional. Defendant at all times maintained that the police officers had been aggressive, that he had felt compelled to comply with the officers' directions, and that he had not voluntarily submitted to the PBT.

The district court held oral argument on defendant's motion and heard the testimony of several witnesses. The district court ruled that Troy Ordinance § 98-10-03 was unconstitutional on its face, that the warrantless search of defendant's person had been unreasonable, and that no exception to the warrant requirement had been applicable on the facts of this case. Therefore, the district court suppressed the evidence collected from defendant during the PBT.[1]

The City subsequently sought leave to appeal the district court's ruling in the Oakland Circuit Court. The circuit court held no oral argument and decided the City's application for leave to appeal on the basis of the written submissions alone. In a succinct but complete opinion and order, the circuit court ob-

---

[1] Although the district court suppressed the evidence collected from defendant during the PBT, it did not grant defendant's motion to dismiss. The district court remarked, "I'm not going to dismiss the case yet [because] the People might be able to prove it without a PBT test, I don't know whether they can or not, but I am not going to go so far as to dismiss it yet."

served that it had surveyed the relevant caselaw and had found no decisions on point, other than the two federal cases cited by defendant before the district court. The circuit court opined that "[t]here is nothing from the appellate courts upon which to base the reversal of the district court" and that the "district court's decision was correct insofar as the ordinance is unconstitutional . . . ." Accordingly, the circuit court denied the City's application for leave to appeal the district court's ruling.

We granted leave to appeal to consider this issue of first impression for the Michigan appellate courts. *People of Troy v Chowdhury*, unpublished order of the Court of Appeals, entered March 20, 2009 (Docket No. 288696).

II

The constitutionality of an ordinance is reviewed de novo, *People v Barton*, 253 Mich App 601, 603; 659 NW2d 654 (2002), as are all other questions of constitutional law, *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We will not disturb a trial court's[2] findings of fact at a suppression hearing unless they are clearly erroneous. *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). However, the ultimate question whether evidence should be suppressed is an issue of law for the court. *People v Dungey*, 235 Mich 144, 146-147; 209 NW 57 (1926). "Questions of law relevant to a motion to suppress evidence are reviewed de novo." *People v Hawkins*, 468 Mich 488, 496; 668 NW2d 602 (2003).

---

[2] In cases such as this, wherein a district court ruling has been appealed in the circuit court, we refer to the district court as the "trial court." See MCR 7.101(A)(1).

III

We cannot conclude that the circuit court erred by denying the City's application for leave to appeal, thereby allowing to stand the district court's order striking down Troy Ordinance § 98.10.03 and suppressing the evidence collected from defendant during the PBT.

The United States District Court for the Eastern District of Michigan has already held a substantially similar Bay City ordinance and a substantially similar state statute unconstitutional. *Spencer v Bay City*, 292 F Supp 2d 932 (ED Mich, 2003); *Platte v Thomas Twp*, 504 F Supp 2d 227 (ED Mich, 2007). In the instant matter, the district court cited these two federal cases as persuasive authority, ruling that Troy Ordinance § 98.10.03 "is too broad," that "requesting someone to submit to a PBT is a search," and that the police were required to obtain a warrant before administering the PBTs unless it could be shown that one of the exceptions to the search warrant requirement applied. As discussed previously, the circuit court agreed, finding no Michigan caselaw on which to base a reversal of the district court's ruling.

A

The City argues that the federal caselaw relied on by the district and circuit courts failed to adequately address the "special needs" exception to the search warrant requirement. The City contends that the "special needs" exception should be applied in this case because there is a compelling state interest in protecting young people from the dangers of alcohol abuse and in protecting the general public from the potential consequences of alcohol abuse by young persons.

It is true, as the City points out, that we are not bound by the decisions of lower federal courts. *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004). However, both *Spencer* and *Platte* thoroughly discussed the issues presented in the instant case and specifically refute the City's argument that the "special needs" exception to the search warrant requirement should apply.

"Both the United States Constitution and the Michigan Constitution guarantee the right against unreasonable searches and seizures. The Michigan Constitution in this regard is generally construed to provide the same protection as the Fourth Amendment of the United States Constitution." *People v Jones*, 279 Mich App 86, 90-91; 755 NW2d 224 (2008) (citations omitted); see also US Const, Am IV; Const 1963, art 1, § 11. " 'The constitutions do not forbid all searches and seizures, only unreasonable ones. . . . The applicable test in determining the reasonableness of an intrusion is to balance the need to search, in the public interest, for evidence of criminal activity against invasion of the individual's privacy.' " *People v Wilkens*, 267 Mich App 728, 733; 705 NW2d 728 (2005) (citation omitted).

"Ordinarily, searches or seizures conducted without a warrant are unreasonable per se. And, generally, when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005) (citation omitted). "There are, however, a number of recognized exceptions to the warrant requirement . . . ." *Id.* Among others, these exceptions include "exigent circumstance[s], searches incident to a lawful arrest, stop and frisk, consent, and plain view. Each of these exceptions, while not requiring a warrant, still

requires reasonableness and probable cause." *People v Brzezinski*, 243 Mich App 431, 433-434; 622 NW2d 528 (2000) (citation omitted). In addition, under "the governmental 'special needs' or regulatory exception," a "warrant or probable cause will not be required . . . as long as the searches meet 'reasonable legislative or administrative standards.' " *People v Woods*, 211 Mich App 314, 317; 535 NW2d 259 (1995), quoting *Griffin v Wisconsin*, 483 US 868, 873; 107 S Ct 3164; 97 L Ed 2d 709 (1987).

In *Spencer*, 292 F Supp 2d at 935, the federal district court considered a Bay City ordinance that provided:

> A peace officer who has reasonable cause to believe a person less than 21 years of age has consumed alcoholic liquor may require the person to submit to a preliminary chemical breath test analysis. A peace officer may arrest a person based in whole or in part upon the results of a preliminary chemical breath analysis. The results of a preliminary chemical breath analysis or other acceptable blood alcohol tests are admissible in a criminal prosecution to determine whether the minor has consumed or possessed alcoholic liquor. A person less than 21 years of age who refuses to submit to a preliminary chemical breath test analysis as required in this subsection is responsible for a state civil infraction and may be ordered to pay a civil fine of not more than $ 100.00.

Bay City defended its ordinance against a claim that it violated the Fourth Amendment by asserting "that the so-called 'special needs' exception excuses the requirement for a search warrant, and the searches are reasonable because they are based on reasonable suspicion." *Id.* at 939. The *Spencer* court disagreed, concluding that

> [t]here is nothing "special" in the need of law enforcement to detect evidence of ordinary criminal wrongdoing; even where crime is on the rise and the disorder and insecurity

caused by criminal behavior in a community is grave, the Supreme Court has consistently held that "the gravity of the threat alone cannot be dispositive of questions concerning what means law enforcement officers may employ to pursue a given purpose." *City of Indianapolis v. Edmond,* 531 U.S. 32, 42, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, th[e Supreme] Court has said that reasonableness generally requires the obtaining of a judicial warrant." *Vernonia School Dist [47J v Acton],* 515 U.S. [646, 653], 115 S.Ct. 2386 [132 L Ed 2d 564 (1995)]. [*Spencer,* 292 F Supp 2d at 941.]

Moreover, as the *Spencer* court explained, the "Supreme Court made clear . . . that laudable, non-criminal purposes of a law authorizing warrantless searches will not exempt the practice from the traditional mandate of a warrant issued upon probable cause when an objective to gather evidence also exists." *Id.* at 942; see also *Ferguson v City of Charleston,* 532 US 67; 121 S Ct 1281; 149 L Ed 2d 205 (2001). The *Spencer* court concluded that "Bay City's ordinance cannot be justified under the 'special needs' exception to the requirement that a search of a person, including a search and seizure of breath samples, must be authorized by a judicial officer through the search warrant process." *Spencer,* 292 F Supp 2d at 942.

Bay City had also argued that "the warrantless searches called for by the ordinance are justified by exigent circumstances, due to the length of time required in Bay City to obtain a search warrant for breath samples." *Id.* at 939. However, the *Spencer* court found that exigent circumstances must be considered on a case-by-case basis because the "time necessary to obtain a warrant in cases that fall within the scope of the ordinance does not create an exigency as a matter of legislative fact, nor does it serve to establish an automatic exemption from the warrant requirement." *Id.* at 944.

In *Platte*, 504 F Supp 2d at 230-231, the federal district court considered MCL 436.1703(6), which provides:

> A peace officer who has reasonable cause to believe a minor has consumed alcoholic liquor or has any bodily alcohol content may require the person to submit to a preliminary chemical breath analysis. A peace officer may arrest a person based in whole or in part upon the results of a preliminary chemical breath analysis. The results of a preliminary chemical breath analysis or other acceptable blood alcohol test are admissible in a criminal prosecution to determine whether the minor has consumed or possessed alcoholic liquor or had any bodily alcohol content. A minor who refuses to submit to a preliminary chemical breath test analysis as required in this subsection is responsible for a state civil infraction and may be ordered to pay a civil fine of not more than $100.00.

In *Platte*, several plaintiffs brought claims under 42 USC 1983 against Thomas Township and other municipalities, as well as the Governor of Michigan and the director of the Michigan State Police, arguing that MCL 436.1703(6) was "unconstitutional insofar as it authorized police officers to compel minors to submit to breath tests for alcohol in the absence of a warrant or circumstances excusing the requirement of a search warrant." *Platte*, 504 F Supp 2d at 230. In response, the defendants argued, as does the City in the case at bar, "that the statute is constitutional on its face because warrantless searches pursuant thereto can be justified on the basis of exigent circumstances and special needs." *Id.* at 231.

Relying on *Spencer* and *Skinner v Railway Labor Executives' Ass'n*, 489 US 602, 616-617; 109 S Ct 1402; 103 L Ed 2d 639 (1989), the *Platte* court observed that " '[i]t is well established that the taking of a breath sample to test for the presence of alcohol constitutes a

search under the Fourth Amendment. As such, the search must be reasonable.' " *Platte*, 504 F Supp 2d at 236 (citations omitted). Regarding the plaintiffs' facial challenge to MCL 436.1703(6), the *Platte* court explained that "the text and context of the statute must be examined to determine if it can be construed in such a way that an unconstitutional interpretation can be avoided, or, on the other hand, whether the statute's plain language authorizes unconstitutional conduct on the part of the government." *Id.* at 238.

The *Platte* court went on to observe that MCL 436.1703(6)

> plainly does not require the police officer to obtain a warrant before taking a breath sample from a minor . . . . There is no dispute that there is a preference expressed in the Fourth Amendment that searches, to be reasonable, be sanctioned by the issuance of a warrant by a neutral and detached judicial officer. Nor does the statute require that any of the recognized exceptions to the warrant requirement exist before the police officer compels a minor to submit to a breath test. [*Id.* (citation omitted).]

Although the defendants in *Platte* argued that the "exigent circumstances" exception to the search warrant requirement should apply, as did Bay City in *Spencer*, the *Platte* court explained that

> to say that there are some circumstances under which breath samples can be taken from minors in a constitutional way *does little to answer the question whether the statute itself is constitutional*, when the statute allows searches and seizures absent the condition of a warrant or an excuse for proceeding without one. [*Id.* (emphasis added).]

One of the defendants in *Platte* contended that "exigent circumstances always exist as a matter of law because search warrants cannot be obtained before a teenager's blood alcohol content dissipates. There-

fore, . . . the statute is valid and the procedures employed by [the] officers thereunder are constitutional." *Id.* at 241. Again, the court rejected the "exigent circumstances" argument, explaining that it

> ignores the general rule that in the criminal context, warrantless searches are presumptively unreasonable; the government bears the burden of establishing an exception to the warrant requirement in the case at hand; the resulting reasonableness *vel non* of the search must turn on the facts of each case; and blanket exceptions to the warrant requirement are disfavored. [*Id.* at 241-242 (citations omitted).]

The *Platte* court concluded that the defendant in question had "not demonstrated that [MCL] 436.1703(6) can survive constitutional challenge by means of a blanket exigent circumstances exception to the Warrant Clause of the Fourth Amendment . . . ." *Id.* at 245.

With respect to the defendants' "special needs" argument, the *Platte* court stated that the "Supreme Court has held that some searches can be reasonable absent both a warrant and exigent circumstances, specifically 'when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." ' " *Id.* at 238 (citations omitted). Referring to the decision in *Spencer*, 292 F Supp 2d at 939-941, the *Platte* court observed, "It is enough to note that the weight of authority relegates the 'special needs' exception to non-criminal governmental activity." *Platte*, 504 F Supp at 239. The court concluded that MCL 436.1703(6) " 'endorses procedures to authorize a search that clearly do not comport with the Fourth Amendment' " and therefore that the statute "is unconstitutional on its face." *Id.* (citation omitted).[3]

---

[3] The *Platte* court was "not prepared to conclude as a matter of law that the offense of minor in possession of alcohol is so insignificant a

The decisions in *Spencer* and *Platte* are both well reasoned and consistent with existing Fourth Amendment law. Accordingly, we find *Spencer* and *Platte* to be persuasive, see *Abela*, 469 Mich at 607, and conclude that Troy Ordinance § 98.10.03 is unconstitutional on its face. Moreover, we agree with the *Spencer* court that "[t]here is nothing 'special' in the need of law enforcement to detect evidence of ordinary criminal wrongdoing" and that " 'reasonableness generally requires the obtaining of a judicial warrant.' " *Spencer*, 292 F Supp 2d at 941 (citation omitted). The "special needs" exception to the search warrant requirement is quite simply not applicable on the facts of this case. See *id.* at 941-942.

B

The City argues that even if Troy Ordinance § 98.10.03 is unconstitutional on its face, the district and circuit court decisions should still be reversed because defendant's Fourth Amendment rights were not violated. Specifically, the City argues that the PBT did not constitute a search within the meaning of the Fourth Amendment and that when the police asked defendant to submit to the PBT, he consented. In addition, the City contends that even if the PBT was a search, the likely dissipation of defendant's bodily alcohol content was an exigency that justified the warrantless search in this case.

transgression that warrantless searches can never be conducted to gather evidence of this crime. If officers must act so quickly to prevent the immediate destruction of evidence that they cannot obtain a search warrant within the time it would reasonably take to procure one, then administration of a PBT without a warrant may be consistent with the Fourth Amendment . . . ." [*Platte*, 504 F Supp at 246 (emphasis deleted).]

The *Platte* court noted that, on the specific facts of that case, there remained "fact questions on the material issue of whether exigent circumstances existed." *Id.*

As an initial matter, we disagree with the City's contention that because a PBT is different and less intrusive than a Breathalyzer test, it is not a search for purposes of the Fourth Amendment. "A search within the meaning of the Fourth Amendment 'occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.' " *Jones*, 279 Mich App at 91, quoting *United States v Jacobsen*, 466 US 109, 113; 104 S Ct 1652; 80 L Ed 2d 85 (1984). "Because the Fourth Amendment protects people, as opposed to places or areas, . . . a search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Taylor*, 253 Mich App 399, 404; 655 NW2d 291 (2002). "Indeed, what an individual ' "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." ' " *Id.*, quoting *People v Clark*, 133 Mich App 619, 625; 350 NW2d 754 (1983), in turn quoting *Katz v United States*, 389 US 347, 351-352; 88 S Ct 507; 19 L Ed 2d 576 (1967).

As discussed previously, the *Spencer* court held that a PBT was a search under the Fourth Amendment: "It is well established that the taking of a breath sample to test for the presence of alcohol constitutes a search under the Fourth Amendment. As such, the search must be reasonable." *Spencer*, 292 F Supp 2d at 939. Other courts have also held that breath tests constitute searches for Fourth Amendment purposes. See, e.g., *State v McGuigan*, 184 Vt 441, 447-448; 965 A2d 511 (2008); *Milwaukee Co v Proegler*, 95 Wis 2d 614, 623; 291 NW2d 608 (Wis App, 1980). Indeed, the United States Supreme Court has held that although breath and urine tests for alcohol may be less intrusive than blood tests,[4] they nonetheless rise to the

---

[4] It is true, as the City notes, that the United States Supreme Court in *Skinner* found breath tests to be less intrusive than blood tests. *Skinner*,

level of searches within the meaning of the Fourth Amendment. *Skinner*, 489 US at 616-617. On the basis of this authority, we have no difficulty concluding that the PBT administered to defendant in this case constituted a search under the Fourth Amendment.

Nor can we agree with the City's argument that defendant consented to the PBT and that a search warrant was consequently not required. "To validate an otherwise unreasonable search or seizure, . . . consent must be unequivocal, specific, and freely and intelligently given." *Dagwan*, 269 Mich App at 342. "Consent [to search] is not voluntary if it is the result of coercion or duress." *People v Bolduc*, 263 Mich App 430, 440; 688 NW2d 316 (2004).

" 'When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.' " *Farrow*, 461 Mich at 208 (citation omitted).

> [K]nowledge of the right to refuse consent is not a prerequisite to effective consent. Rather, knowledge of the right to refuse is but one factor to consider in determining whether consent was voluntary under the totality of the circumstances. However, . . . the people need not prove that the person giving consent knew of the right to withhold consent. [*People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999) (citations omitted).]

---

489 US at 625-626. But this conclusion was in the context of a broader holding that chemical tests administered to railroad employees for safety reasons—and *not* for the purpose of ordinary crime detection—met the "special needs" exception to the search warrant requirement. See *id.* at 633-634. As discussed previously, the "special needs" exception is inapplicable to law enforcement's desire to detect evidence of ordinary criminal wrongdoing, such as in the case at bar. *Spencer*, 292 F Supp 2d at 941.

In the case at bar, the district court did not address the issue of consent, which generally presents a question of fact and normally involves credibility determinations. Nonetheless, it is clear from the record that defendant was never asked for his consent. Although there was conflicting testimony regarding which officer administered certain of the PBTs in this case, both officers testified that they did not ask defendant and the other young adults for their consent. Defendant testified, as did the others, that he had not consented to the PBT and that he had felt as though he had no choice in the matter. Indeed, defendant testified that he believed that he would go to jail if he refused to submit to the PBT.[5] Defendant also testified that one officer "was really aggressive and intimidating. I didn't want to say anything to tick him off." Even one of the officers admitted that he was "pretty sure it was implied [that the young adults] were not able to leave until I finished the investigation."

The record plainly establishes that defendant was never asked for his consent and did not give his consent at any time. The City does not cite any caselaw to suggest that a mere failure to object to a proposed search constitutes actual consent. Nor could the City do so, as no such authority exists. Indeed, as noted earlier, the prosecution bears the burden of proving that consent to search was freely and voluntarily given. *Farrow*, 461 Mich at 208. " 'This burden cannot be discharged

---

[5] According to the testimony of certain witnesses, one of the officers had stated that anyone who refused to take the PBT would go to jail. Other witnesses testified somewhat differently. However, even these other witnesses testified that the officer had told them that if they refused to take the PBT, he would "take us to the station" or to "the police station." One witness testified that although he could not recall the exact words used by the officer, he had assumed that he would go to jail if he refused to take the PBT.

by showing no more than acquiescence to a claim of lawful authority.' " *Id.* (citation omitted). Defendant did not consent to the police officers' administration of the PBT in this case.

Lastly, we disagree with the City's argument that there were exigent circumstances that precluded the need for a search warrant in the present case. The City asserts that because the Troy police were dealing with a group of several young adults, it would have taken too long to secure search warrants authorizing the administration of a PBT to each of the minors. Specifically, the City asserts that during the time it would have taken to obtain search warrants, the minors' bodily alcohol content would have dissipated and any evidence of illegal alcohol consumption would have been lost.

The existence of exigent circumstances must be considered on a case-by-case basis. The "exigent circumstances" exception to the search warrant requirement provides that the police may search without a warrant in cases of " 'actual emergency' " if there are " 'specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect.' " *People v Beuschlein*, 245 Mich App 744, 749-750; 630 NW2d 921 (2001) (citation omitted).

As in *Platte*, we perceive no exigencies in the case at bar that would have permitted a PBT search without a valid search warrant. Similar to the City's argument in this case, one of the defendants in *Platte* complained of "the rapid rate of dissipation of alcohol in the bloodstream compared to the time it takes its police officers to obtain a search warrant." *Platte*, 504 F Supp 2d at 242. The *Platte* court found that the "record in this case . . . fails to establish that the evidence sought

'would probably be destroyed within the time necessary to obtain a search warrant' when measured against the time the . . . police officers loitered at the scene in this case." *Id.* (emphasis deleted; citation omitted). Moreover, while one of the police officers in *Platte* testified that "a search warrant could be obtained . . . in an hour and fifteen minutes," an expert witness testified that "alcohol would not dissipate from the average male's blood until two hours and twenty minutes after consumption ceases; for an average female, dissipation would not occur until three hours after consumption." *Id.* at 243. The *Platte* court concluded that "the record in this case establishes that the . . . police officers had time to request a search warrant to take breath samples from [the defendants]." *Id.*

In the instant case, the City presented no evidence at the district court suppression hearing to establish that the police officers could not have sought and obtained search warrants before dissipation of the minors' bodily alcohol content. Nor did the City present evidence of any other exigent circumstances. In short, the City failed to substantiate its claim that "it would have taken a long time to secure search warrants specifically authorizing the administration of a PBT" to each of the young adults. The district court did not clearly err by declining to find the existence of exigent circumstances in this case. See *Farrow*, 461 Mich at 209. No exigent circumstances having been established, we conclude that the police were required to procure a valid search warrant before administering the PBT to defendant.

C

The PBT administered to defendant in this case constituted a search within the meaning of the Fourth Amendment, to which defendant did not consent. None

of the exceptions to the search warrant requirement applied, and the police officers were accordingly required to seek and obtain a valid search warrant before administering the PBT to defendant. The district court did not err by ruling that Troy Ordinance § 98.10.03 is unconstitutional on its face or by suppressing the evidence collected from defendant during the warrantless PBT search. Nor did the circuit court err by denying the City's application for leave to appeal.

Affirmed.