# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

ROBERT EROLL WRIGHT,

      Defendant-Appellee.

UNPUBLISHED
March 31, 2016

No. 329023
Oakland Circuit Court
LC No. 2015-146032-AR

Before: TALBOT, C.J., and WILDER and BECKERING, JJ.

PER CURIAM.

The prosecution appeals by leave granted the circuit court's opinion and order affirming the district court's orders suppressing evidence and dismissing an operating while intoxicated (OWI), MCL 257.625, charge against defendant, Robert Wright. The district court entered its order of dismissal after suppressing the results of a preliminary chemical breath test (PBT)[1] administered after defendant was subjected to a traffic stop for defective equipment. Because we find that there was reasonable cause to require the PBT in this case, we reverse and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a traffic stop performed by Michigan State Police Troopers Angelo Brown and Roger Haddad on May 23, 2014. At approximately 3:30 a.m., the officers noticed that defendant's vehicle did not have working license plate lights and decided to initiate a traffic stop.

---

[1] A PBT often serves as a precursor to a subsequent chemical breath test (CBT), which in this case was administered in the form of a blood draw at a local hospital. The results of a PBT are inadmissible as substantive evidence of intoxication, whereas a CBT is performed "after an offender has been arrested and [the results of the test are] admissible in court as evidence of intoxication." *People v Gregg*, 489 Mich 903, 904 n 2; 796 NW2d 263 (2011) (MARILYN KELLY, J., dissenting).

-1-

After defendant pulled his vehicle over, Brown and Haddad left their marked police vehicle and approached from either side of defendant's vehicle. As Brown approached the driver's side, he noticed that defendant had his hand beneath his (defendant's) thigh. Brown, thinking defendant might have a gun, yelled twice and directed defendant to show his hands.[2] Because defendant did not comply, Brown drew his service weapon and ran to the back of the vehicle. At that time, defendant placed his hands on the steering wheel, and Haddad told Brown "that it was all clear." According to Haddad, defendant was "fumbling" while trying to produce his wallet, and he "finally" produced his wallet after his initial delay.

Brown approached defendant's vehicle a second time and "detected an odor of intoxicants and burnt marijuana."[3] Defendant complied with Brown's requests to provide his identification and registration. Because of the odor of intoxicants and marijuana, Brown asked defendant to exit his vehicle, and defendant complied. Brown placed defendant in handcuffs "immediately" after he stepped out of the vehicle. Brown asked defendant if "he's had anything to drink," and defendant responded that he had consumed three shots of cognac.[4] Brown admitted that defendant did not appear to have trouble maintaining his balance, and that defendant, aside from failing to comply with the command to show his hands, complied with the rest of the commands given to him. Brown also admitted that neither he nor Haddad asked defendant to perform any roadside sobriety tests, even though some of the roadside sobriety tests could be performed by a suspect who was handcuffed.

At some point after the stop—the precise time is unclear from the evidentiary hearing—Brown asked defendant to submit to a PBT. The PBT showed that defendant had a blood-alcohol concentration of 0.176, which is well above the legal limit. Brown and Haddad had defendant's vehicle towed and brought defendant to the police station. When specifically asked at the evidentiary hearing why he asked defendant to take the PBT, Brown replied:

> I believed that [defendant] could've been intoxicated, the way he was acting initially, his slow [sic] to reactions. I gave two loud verbal commands and he disregarded both of them, and that's it.

The prosecution charged defendant with OWI. On December 19, 2014, defendant filed a motion to suppress. According to defendant, Brown lacked reasonable cause under MLC

---

[2] Brown initially testified that he "believed" the windows on defendant's vehicle were open at this time. He later conceded, "[t]o be honest with you, I don't know if his window was down. But I was making loud verbal commands."

[3] Haddad testified that he could smell marijuana from the passenger side of the vehicle.

[4] At an evidentiary hearing, Brown initially testified that defendant was still in his vehicle at the time he made the admission about consuming alcohol; however, Brown, after reviewing Haddad's written report about the incident, clarified that defendant was outside of the vehicle and in handcuffs at the time.

257.625a(2) to administer the PBT and the results of the PBT should be suppressed. Without the PBT, Brown lacked probable cause to arrest, and the charge should be dismissed.

In an opinion delivered from the bench, the district court granted defendant's motion on March 5, 2015. The court reasoned that

> there was no probable cause to administer the PBT when there had not been a single sobriety test on [defendant] prior to administrating [sic], nor did the trooper observe any erratic [or] impaired driving. And that Trooper Brown lack[ed] reasonable cause to administer the PBT therefore it shall be suppressed.

On appeal, the circuit court affirmed the district court's order. The circuit court agreed that Brown "did not have reasonable cause to believe that Defendant's ability to operate his vehicle was affected," and therefore "there was no reasonable cause to administer the PBT and the results were properly suppressed." The court explained:

> The troopers in the instant case did not have any evidence that Defendant's ability to operate his vehicle was impaired. Neither trooper observed any erratic behavior from Defendant. Neither trooper testified to observing any physical manifestations of intoxication from Defendant. There was no testimony regarding Defendant's failure of a field sobriety test. There was no testimony regarding when Defendant consumed the three shots of cognac in relation to his operation of the vehicle. Both troopers testified that other than Defendant's failure to immediately place his hands on the steering wheel, Defendant was perfectly compliant with all orders, non-combative and non-aggressive. Taken as a whole, the testimony from the troopers provides no evidence that Defendant was impaired or failed to comply with their orders.

The prosecution's appeal of the suppression of the PBT and dismissal of the OWI charge is now before us on leave granted.

## II. ANALYSIS

The prosecution argues that the district court and circuit court erred when they concluded that the officers lacked reasonable cause to administer the PBT. We agree.

This Court reviews a trial court's findings of fact in a suppression hearing for clear error. *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009). A decision is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). The ultimate decision on a motion to suppress is reviewed de novo. *Hyde*, 285 Mich App at 438. Whether a search violated the Fourth Amendment, whether an exclusionary rule applies, and whether an officer's suspicion is reasonable under the Fourth Amendment are questions of constitutional law that this Court reviews de novo. *Id.*; *People v Bloxson*, 205 Mich App 236, 245; 517 NW2d 563 (1994). Finally, this Court reviews issues involving statutory interpretation and application de novo. *People v Stone Transport, Inc*, 241 Mich App 49, 50; 613 NW2d 737 (2000).

-3-

The Fourth Amendment to the United States Constitution guarantees the right against unreasonable searches and seizures, US Const, Am IV; see also Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000), and both the United States Supreme Court and this Court have held that chemical breath tests for alcohol constitute "searches" within the meaning of the Fourth Amendment, *Skinner v Railway Labor Executives' Ass'n*, 489 US 602, 616-617; 109 S Ct 1402; 103 L Ed 2d 639 (1989); *People v Chowdhury*, 285 Mich App 509, 523-524; 775 NW2d 845 (2009). Generally, the introduction into evidence of materials seized and observations made during an unreasonable search is barred by the exclusionary rule. *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003).

"Generally, seizures are reasonable for purposes of the Fourth Amendment only if based on probable cause." *People v Lewis*, 251 Mich App 58, 69; 649 NW2d 792 (2002). In *Terry v Ohio*, 392 US 1, 30–31; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the United States Supreme Court carved out an exception to the probable cause requirement. It determined that the Fourth Amendment permits the police to stop and briefly detain a person for investigation based on reasonable and articulable suspicion that criminal activity may be afoot. *Id*. at 21, 30-31. The *Terry* exception has been extended to incorporate investigative stops under a variety of circumstances for specific law enforcement needs, including traffic stops. *People v Nelson*, 443 Mich 626, 631; 505 NW2d 266 (1993). If an investigative stop of an automobile is proper, the officer is "permitted to briefly detain the vehicle and make reasonable inquiries aimed at confirming or dispelling his suspicions." *People v Yeoman*, 218 Mich App 406, 411; 554 NW2d 577 (1996). These stops should last long enough only to confirm or dispel the officer's initial suspicion, but can in many cases produce evidence to establish probable cause for arrest or a more thorough search. *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011).

In this case, there is no dispute that the officers had cause to initiate a traffic stop of defendant's vehicle based on their direct observation of defective equipment, a point to which defendant has conceded. And defendant does not contend that the officers lacked a reasonable and articulable suspicion justifying a brief detention in order to make reasonable inquiries aimed at confirming or dispelling their suspicions arising from defendant's initial noncompliance and the smell of burnt marijuana and intoxicants inside the vehicle. See *Yeoman*, 218 Mich at 411. The heart of the issue on appeal is whether the officers had reasonable cause to require a PBT. Under MCL 257.625a(2), an officer may require a PBT based on "reasonable cause." In pertinent part, that statute[5] reads:

> (2) A peace officer who has *reasonable cause* to believe that a person was operating a vehicle upon a public highway . . . within this state and that the person by the consumption of alcoholic liquor may have affected his or her ability to operate a vehicle . . . may require the person to submit to a preliminary chemical breath analysis. The following provisions apply with respect to a preliminary chemical breath analysis administered under this subsection:

---

[5] MCL 257.625a has since been amended; this opinion will refer to the version that was in effect on May 23, 2014, the date of the traffic stop.

(a) A peace officer may arrest a person based in whole or in part upon the results of a preliminary chemical breath analysis.  [MCL 257.625a(2) (emphasis added).]

The parties dispute whether the phrase "reasonable cause" used in the statute is the equivalent of "probable cause,"[6] or whether it is the equivalent of a lesser standard, such as reasonable suspicion.[7]  We need not weigh in on this matter because we find that the totality of the evidence available to Brown and Haddad was sufficient to establish probable cause—and, by extension, any lesser standard—that defendant was operating a motor vehicle and that the consumption of alcohol may have affected his ability to do so.  See MCL 257.625a(2).  Hence, regardless of whether "reasonable cause" is the equivalent of "probable cause," we find that the totality of the circumstances present to Brown and Haddad was sufficient under MCL 257.625a(2) to require a PBT in this case.[8]

In finding that reasonable cause existed, we review the totality of the factors present, but focus primarily on three pertinent factors.  The first of which is that, as Brown and Haddad approached the car, Brown twice shouted to defendant to show his hands; defendant did not immediately comply, which Brown interpreted as a "slow" reaction to his commands.  Although defendant later complied with the officers' subsequent commands, it appears undisputed that he

---

[6] "Probable cause exists when the facts and circumstances known to the police officers at the time of the search would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence will be found in a particular place."  *People v Beuschlein*, 245 Mich App 744, 750; 630 NW2d 921 (2001).

[7] "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause."  *People v Rizzo*, 243 Mich App 151, 156; 622 NW2d 319 (2000) (citation and quotation marks omitted).

[8] In passing, the prosecution argues that defendant consented to the PBT; thus, it does not matter whether reasonable cause existed for the police officers to require defendant to submit to the test.  Consent is an exception to the probable cause requirement for searches.  *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999).  In order to be valid, consent must be freely and voluntarily given.  *Id*.  On the issue of whether defendant's consent was voluntary, we note that the matter was not explored in detail below.  We also note that defendant was in custody and under arrest at the time he was asked to submit to the PBT.  The prosecution bears a "*particularly heavy*" burden of proving that the consent was voluntary when an individual is under arrest; however, a defendant being in custody does not necessarily require the conclusion that consent was involuntary.  *People v Reed*, 393 Mich 342, 366; 224 NW2d 867 (1975); *People v Kaigler*, 368 Mich 281, 294; 118 NW2d 406 (1962).  See also *United States v Watson*, 423 US 411, 424; 96 S Ct 820; 46 L Ed 2d 598 (1976) ("the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search.").  Nonetheless, we decline to weigh in on this issue because whether consent is voluntarily given is a question of fact, *Borchard-Ruhland*, 460 Mich at 294, and it does not appear that the issue of consent was fully explored below.  Furthermore, the parties' briefs on appeal contain only passing mention to the idea of consent.

did not initially comply with Brown's loud verbal commands. Also, according to Haddad, defendant was "fumbling" and was slow in producing his wallet. This could suggest evidence of impairment. The circuit court minimized defendant's initial non-compliance by pointing out that he complied with the majority of the officers' commands; however, this ignores that defendant did not initially comply, that Brown found his reactions to be "slow," and that Haddad testified that defendant was "fumbling" and slow to produce his wallet, an activity that is not altogether difficult or extraordinary for someone who is not impaired.

The second factor we find to be significant in this case is that both officers detected the odor of burnt marijuana and intoxicants emanating from defendant's vehicle. Defendant was the only occupant of the vehicle at the time, and it was reasonable for the officers to conclude that he had some connection with these odors. As to the final pertinent factor—and perhaps the piece that tied everything together—defendant admitted to having consumed three shots of cognac.[9] This confirmed that defendant was likely connected to the odor of intoxicants and that he had been drinking that evening. Further, it made it likely that he had been drinking recently enough for the odor of intoxicating liquor to continue to emanate from the automobile at the time of the traffic stop. And, defendant confirmed that he had consumed multiple drinks, which provided further evidence of possible impairment.

In sum, we hold that the number of drinks, combined with the odor of intoxicants, as well as defendant's initial failure to comply with two loud verbal commands—wherein the delay was sufficiently concerning so as to cause Haddad to draw his service weapon and retreat out of concern over the reason for such delay—was enough to give the officers sufficient cause to believe that defendant, "by the consumption of alcoholic liquor may have affected his . . . ability to operate a vehicle[.]" See MCL 257.625a(2). The statute does not, as the district court and circuit court concluded, require actual evidence of impairment, just that the person, "by the consumption of alcoholic liquor *may have* affected his or her ability to operate a vehicle[.]" Although we do not believe that any of the facts of this case would, standing alone, have authorized the officers to require a PBT, we hold that, when viewed together, there was sufficient evidence to constitute probable cause—or some lesser standard.

In so concluding, we note that this is a close case; however, it is one that did not need to be this close. Although the finding of reasonable cause does not require roadside sobriety tests, had the officers performed those tests instead of immediately arresting defendant, there could

---

[9] It appears from the record that defendant's voluntary admission about his alcohol consumption came after he was already in custody. Also, it does not appear that defendant was advised of his rights pursuant to *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). While any voluntary statement defendant gave in violation of *Miranda* would not be admissible at trial, the fruits of such voluntary statement are not "inherently tainted" for all purposes. *People v Melotik*, 221 Mich App 190, 199; 561 NW2d 453 (1997) (citation and quotation marks omitted). See also *United States v Patane*, 542 US 630, 641-642; 124 S Ct 2620; 159 L Ed 2d 667 (2004). Thus, we need not disregard the statement for purposes of determining whether there was probable cause for requiring the PBT. See *Melotik*, 221 Mich App at 199.

have been a much stronger case for reasonable cause under MCL 257.625a(2). Nevertheless, our preferences do not amount to constitutional or statutory requirements, and we believe that the facts of this case gave the officers enough information, based on the limited and somewhat perfunctory investigation, to satisfy the reasonable cause requirement of MCL 257.625a(2).

## III. CONCLUSION

Because the facts of this case were sufficient to provide Brown and Haddad with reasonable cause under MCL 257.625a(2), regardless of whether "reasonable cause" is equivalent to probable cause or some lesser standard, we find that circuit court and district court erred. Accordingly, we reverse the order of suppression and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Jane M. Beckering