*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

COLLIN JAMES STRICKLIN,

Defendant-Appellee.

FOR PUBLICATION
April 18, 2019
9:10 a.m.

No. 340614
Kalamazoo Circuit Court
LC No. 2016-000496-AR

Before: METER, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

By leave granted,[1] the People appeal the district court's suppression of blood draw evidence after it held that defendant, Collin James Stricklin, was subject to a warrantless Fourth Amendment search during a suspected drunk driving encounter with police. Defendant was arrested and charged with operating while intoxicated in violation of MCL 257.625. It is uncontested that the arresting police officer informed defendant that, under the implied consent law, should he refuse consent to a blood draw, he would temporarily lose his license and be subject to the mandatory imposition of six points against his driving record. After an evidentiary hearing, the district court suppressed the blood draw evidence, concluding that law enforcement obtained it during an illegal warrantless search. The circuit court affirmed, concluding that defendant's alleged consent to the blood draw was involuntary and coercive because he drove for a living and feared the impact that losing his license would have on his economic livelihood. The People now appeal, arguing that the district and circuit courts misapplied Fourth Amendment precedent and erred in concluding that defendant's express consent was involuntary. We agree and reverse.

Defendant filed a motion to suppress evidence obtained from a blood draw, arguing that it was an illegal warrantless search under the Fourth Amendment because defendant was

---

[1] *People v Stricklin*, unpublished order of the Court of Appeals, entered March 23, 2018 (Docket No. 340614).

threatened with loss of his driving privileges if he refused consent. During oral arguments on defendant's motion, the prosecution contended that this was an issue of first impression for the court but maintained that the United States Supreme Court's then-recent decision in *Birchfield v North Dakota*, __ US __; 136 S Ct 2160; 195 L Ed 2d 560 (2016), did not apply because Michigan's implied consent law only provided for civil penalties. Defendant's counsel assured the district court that defendant "was not in any way challenging the constitutionality of Michigan's Implied Consent Law or sanctions" but rather arguing only that the threat of sanctions affected the voluntariness of his client's consent to the blood draw and that *Birchfield* reaffirmed that consent is based on the "totality of the circumstances." Defense counsel fully acknowledged that *Birchfield* primarily addressed the legality of criminal penalties for refusing consent but considered that argument "a red herring" and a "distraction." Rather, defense counsel stated that "[t]he issue is voluntariness and the severe implied consent sanctions can certainly or should certainly be considered" when assessing voluntariness.

The district court held an evidentiary hearing on the suppression motion. Police Officer Matthew Britton testified for the prosecution. On August 29, 2015, Officer Britton pulled over defendant for speeding. He performed an OWI investigation, including a field sobriety test and a preliminary breath test. Based on the results of this investigation, Officer Britton arrested defendant for operating while intoxicated. Subsequently, Officer Britton asked defendant to take an evidentiary chemical test. He read the standard form DI177 instructions to obtain consent. The form stated, in pertinent part:

> I am requesting that you take a chemical test to check for alcohol and/or controlled substances or other intoxicating substance in your body. IF YOU WERE ASKED TO TAKE OR TOOK A PRELIMINARY BREATH TEST BEFORE YOUR ARREST, YOU MUST STILL TAKE THE TEST I AM OFFERING YOU.

> If you refuse to take this chemical test, it will not be given without a court order, but I may seek to obtain such a court order. Your refusal to take this test shall result in the suspension of your operator's or chauffeur's license and vehicle group designation or operating privilege, and the addition of six points to your driving record.

Defendant consented to take the blood test. When asked whether he believed that defendant understood his rights, Officer Britton answered, "I believe so." Officer Britton also agreed that defendant was fully aware that refusal would result in a suspension of his license as well as six points added to his driving record. Overall, Officer Britton described defendant as cooperative. Given the circumstances, he could not remember why he decided to ask for a blood test over a breath test, and stated only that it was his personal preference.

Defendant testified on his own behalf. He said that, at the time of his arrest, he was working at Harold Ziegler Auto Group in a position that required a valid driver's license. In addition to working, he also took classes as an enrolled student in the Fire Academy at Kalamazoo Valley Community College. Defendant testified that he would need a driver's license to become a firefighter. He testified that having a driver's license was "pretty important" to his livelihood and career.

Defendant recalled Officer Britton reading him his rights. He testified that he was fearful "of not cooperating and the consequences" to his livelihood and career. He did not feel as if he had any choice. On cross-examination, defendant admitted that the results of the chemical test indicated that he was drunk. He also acknowledged that he did have a choice to refuse to submit to the test and agreed that he consented to the blood test after the officer read him his rights. Defendant said that he "was mainly focused on being one hundred percent compliant" and was not concerned about whether the officer would obtain a warrant had he refused chemical testing and acknowledged that his blood alcohol level could have been lower depending on how long it took the officer to obtain the warrant. He was also aware that a conviction for drunk driving would negatively impact his ability to have a driver's license.

After hearing these two witnesses, the district court gave its decision directly from the bench. It recognized that the taking of a blood sample is a search governed by the Fourth Amendment. The district court did not actually address whether or not it found defendant's consent involuntary or coerced, but rather reasoned that a warrant was necessary absent exigent circumstances. The district court held there was no exigent circumstance present as the choice to draw blood rather than utilize a breath test was only based on the officer's personal preference. Accordingly, the district court suppressed the blood draw evidence. At a settlement conference held the following week, the prosecution indicated that it was unable to proceed because of this unfavorable evidentiary ruling. It asked for a stay pending an appeal. The district court stated that it was "not inclined to stay" because the case was already over a year old and dismissed the case without prejudice.

The prosecution appealed to the circuit court. The circuit court agreed that no exigent circumstances supported a warrantless search because the officer admitted that it was his personal preference to obtain a blood draw rather than a breath test and that nothing prevented him from obtaining a search warrant. Respecting whether defendant gave valid consent, the circuit court determined that the totality of the circumstances demonstrated that defendant's consent to a blood draw was involuntary because he testified that "he felt coerced by the potential sanctions for failing to comply with the officer's request" since "having a license was important to his livelihood."

The prosecution now appeals to this Court, arguing that the district and circuit courts erred in concluding that defendant's express consent to the blood draw was not a valid exception to the Fourth Amendment's warrant requirement.

> We review de novo the circuit court's ultimate ruling on a motion to suppress evidence. However, we review its factual findings for clear error. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. We overstep our review function if we substitute our own judgment for that of the trial court and make independent findings. [*People v Barbarich (On Remand)*, 291 Mich App 468, 471-472; 807 NW2d 56 (2011) (quotation marks and citations omitted).]

"But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference[.]" *People v Woodard*, 321 Mich App 377, 382;

909 NW2d 299 (2017) (quotation marks and citation omitted; alteration in original). "We review de novo whether the Fourth Amendment was violated and whether the exclusionary rule applies." *Id*. at 382.

The circuit court erred in applying the exclusionary rule under the Fourth Amendment when it affirmed the district court's suppression of evidence of a blood draw. We conclude that defendant's consent to the warrantless search was not coercive or involuntary under applicable precedent solely as a result of defendant's stated fear of economic consequences stemming from the suspension of his license under the implied consent law.

In *Birchfield*, 136 S Ct at 2173, the United States Supreme Court held that the taking of a blood sample constituted a search and that, consistent with the Fourth Amendment, in order to obtain a blood sample, law enforcement must either obtain a warrant or satisfy an exception to the warrant requirement. The *Birchfield* Court held that because a blood test is highly intrusive, law enforcement may not conduct a blood test pursuant to the search incident to a lawful arrest exception. *Id*. at 2184. There are two remaining exceptions to the warrant requirement potentially relevant to this appeal: (1) whether exigent circumstances existed constituting an emergency justifying the warrantless taking of a blood sample; and (2) whether the defendant validly consented. Both the district court and the circuit court held that the exigent circumstances exception does not apply. The prosecution does not argue this was error. The parties disagree over whether defendant validly consented to the warrantless blood draw.

"It is well established that a search is reasonable when the subject consents and that sometimes consent to a search need not be express but may be fairly inferred from context." *Id*. at 2185 (citations omitted). "[V]oluntariness of consent to a search must be 'determined from the totality of all the circumstances . . . .' " *Id*. at 2186, quoting *Schneckloth v Bustamonte*, 412 US 218, 219; 93 S Ct 2041; 36 L Ed 2d 854 (1973).

Important to this Court's review, defendant does not purport to challenge the validity of the implied consent laws, and for good reason. In *Birchfield*, the United States Supreme Court expressly recognized that it has repeatedly "referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Id*. at 2185. Indeed, all 50 states have enacted a similar law and "[s]uspension or revocation of the motorist's driver's license remains the standard legal consequence of refusal." *Id*. at 2169. In Michigan, our Supreme Court has recognized that "there is a strong public interest reflected" in the implied consent law and that "society is aware of the need for effective laws to curtail drunken driving." See *People v Perlos*, 436 Mich 305, 327; 462 NW2d 310 (1990).

"A consent to search permits a search and seizure without a warrant when the consent is unequivocal, specific, and freely and intelligently given." *People v Galloway*, 259 Mich App 634, 648; 675 NW2d 883 (2003). "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he [or she] has the burden of proving that the consent was, in fact, freely and voluntarily given." *People v Chowdhury*, 285 Mich App 509, 524; 775 NW2d 845 (2009) (quotation marks and citation omitted). The prosecutor cannot satisfy this burden by simply showing the defendant's acquiescence to lawful authority. *Id*. Notably, the defendant's

-4-

knowledge of the right to refuse "is not a prerequisite to effective consent," but merely one factor in a totality of the circumstances analysis. *Id*. (quotation marks and citation omitted).

In the seminal case of *Schneckloth*,[2] the United States Supreme Court held that the Fourth Amendment requires "that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 US at 228. The Supreme Court noted that this determination, which is commonly referred to as "voluntariness," does not lend easily to a "talismanic definition," but rather "reflect[s] an accommodation of the complex of values implicated," and a need to "reconcil[e] the recognized legitimacy of consent searches with the requirement that they be free from any aspect of official coercion . . . ." *Id*. at 224-225, 229. The essential question is whether, under "the most careful scrutiny," the defendant's free will "has been overborne and [the defendant's] capacity for self-determination critically impaired" by official coercion. *Id*. at 225, 229. The Supreme Court recognized some of the relevant factors in a totality of the circumstances analysis for assessing the psychological impact on the accused to include age, educational level, whether the accused is advised of his or her constitutional rights, the nature of the detention, and the use of physical punishment. *Id*. at 226.

In this case, the evidentiary hearing record is sparse on details concerning the financial or psychological impact of the consent decision on defendant and how it may have affected his ability to exercise free will. There can be little doubt that, by choosing first to drive drunk, defendant left himself in a Catch-22 of choosing, at least from his point of view, the lesser of two evils. If defendant consented to the blood draw, it could prove he was driving drunk, which would likely result in a drunk driving conviction with attendant loss of driving privileges, fine, and possible jail time. If defendant refused the blood draw, that choice would necessarily result in a license suspension and points.

This Court has previously held that "the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference[.]" *Woodward*, 321 Mich App at 382 (quotation marks and citation omitted; alteration in original). Whether the Fourth Amendment was violated and the exclusionary rule applies is subject to our de novo review. *Id*. at 382.[3] During the short evidentiary hearing, defendant essentially conceded that he understood his rights and the choice presented. While testifying that he felt as if he had no

---

[2] Although it related directly to the suppression of coerced confessions and not blood draws, the importance of *Schneckloth* is apparent. In *Birchfield*, the United States Supreme Court cited *Schneckloth* for its proposition that voluntariness of consent for blood draws demands a voluntariness inquiry. See *Birchfield*, 136 S Ct at 2186. Likewise, Michigan appellate courts have regularly relied on *Schneckloth* in determining the validity of consent in chemical testing cases. See, e.g., *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999).

[3] We note that the district court failed to recognize that consent is an exception to the Fourth Amendment's warrant requirement and did not make any factual determination as to the voluntariness of defendant's consent. Because we conclude that the limited, established record could not possibly support a factual finding that defendant's consent was involuntary, a remand would be an exercise in futility.

choice, he acknowledged that he understood that Officer Britton could obtain a warrant if he refused. He also testified that he understood the consequences of a drunk driving conviction. We conclude that this is the testimony of someone who clearly understood and appreciated the relevant stakes when faced with two unfavorable choices, not no choice at all. Accordingly, defendant's express consent to the blood draw was a valid exception to the Fourth Amendment's warrant requirement.

A defendant may always consent to a warrantless search. Defendant admitted during the evidentiary hearing that he fully understood his choices under the implied consent law and made an informed, reasoned decision. Having to make a choice between two undesirable options does not render defendant's express consent to the blood draw coercive and involuntary.

Reversed and remanded for further proceedings. We do not retain jurisdiction.


/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Thomas C. Cameron