*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HAI VAN MAI,

Defendant-Appellant.

UNPUBLISHED
May 20, 2025
3:06 PM

No. 367194
Ottawa Circuit Court
LC No. 21-044695-FC

Before: PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b). The trial court sentenced defendant to a prison term of 300 to 600 months. Defendant was also subject to lifetime registration under the Sex Offenders Registration Act (SORA) MCL 28.721 *et seq*., and lifetime electronic monitoring (LEM) upon his release. See MCL 28.722(v)(*iv*) and MCL 28.725(13) of the SORA; see also MCL 750.520n. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The victim in this case, JB, would often spend time at his maternal aunt's home with his cousins while his mother worked or attended college courses. JB's aunt was married to defendant. In the fall or winter of 2014, JB was six years old and spending another day at his aunt's home with his cousins and defendant. Defendant called JB into defendant's bedroom. After JB entered, defendant shut the door, grabbed JB's shoulders, pushed JB to his knees, pulled down his own pants and underwear, and forced his penis into JB's mouth. JB recalled the incident lasting one to two minutes; the assault stopped when the floors outside the bedroom creaked, suggesting that someone was walking toward the bedroom. Similar episodes of sexual abuse occurred approximately ten times; nine occurred in the bedroom, and one assault occurred in the bathroom. JB testified about feeling horrible and disgusted by the experience.

Defendant did not threaten JB to keep quiet. He did, however, give JB a gaming console, which JB threw away. When JB was 10 or 11 years old, JB recalled that defendant pulled JB aside and asked him whether he "remember[ed] anything that happened a few years ago." JB told

-1-

defendant that he did not because JB wanted to forget and he wanted defendant to think that he had forgotten.

In January 2021, when JB was 12 years old, JB disclosed the assaults to his mother, who informed law enforcement and her sister (JB's aunt). JB's aunt called defendant and confronted him about the accusations; JB's aunt testified that defendant's response was that he would not "say anything because [he's] going to get in trouble." JB's aunt left the home with her children and had separated from defendant by the time of trial. JB participated in a forensic interview with the Children's Advocacy Center during the investigation.

After two days of trial in 2023, the jury began deliberating. After several hours, they were not able to reach a verdict. The trial court then read the deadlocked-jury instruction to the jury. Approximately two hours into the third day of trial, the jury was still not able to reach a verdict; the trial court reread the deadlocked-jury instruction. Shortly thereafter, the jury inquired whether the alternate juror could take the place of a seated juror for mental-health reasons. The trial court stated that if a juror were experiencing adverse mental-health issues, then the juror would need to be questioned. Shortly thereafter, Juror 11 requested that she be removed from the jury because of mental-health issues. She stated that she was unable to continue deliberating because she was experiencing a panic attack, which she had experienced on prior occasions. The trial court asked her whether she would be physically or mentally able to continue and the juror said that she could not do so, stating: "Physically I am—the way—the way I'm feeling inside right now, I don't even know if I can get home."

The trial court asked whether the juror was "able to continue engaging in communications and conversations about the case" with the rest of the jury, to which she responded: "No, sir. I believe that's what brought the panic attack on." The trial court opted to excuse her and replace her with the alternate juror. Defendant objected and asked for further inquiry of the juror. Defendant also moved for a mistrial. The trial court acknowledged defendant's legitimate concerns but explained that the trial court could not probe into the nature of jury deliberations.

The trial court denied the motion for a mistrial and replaced Juror 11 with the alternate juror. After the trial court determined that the alternate juror had not conducted any research or discussed any details of the case, the jury resumed deliberating. After approximately 45 minutes, the reconstituted jury found defendant guilty of CSC-I. Defendant was subsequently sentenced as described.

In February 2024, defendant moved the trial court for an evidentiary hearing or a new trial, rearguing his initial objections and claiming that he had been denied the right to a unanimous jury when the jury was deadlocked until a juror was replaced. Defendant also raised issues concerning alleged prosecutorial misconduct, ineffective assistance of counsel, and the violation of his right to due process. Additionally, defendant moved to correct his allegedly invalid sentence, arguing that mandatory SORA registration and LEM were unconstitutional punishments. After a hearing on the motions, the trial court denied both motions. This appeal followed.

## II.  TRIAL ISSUES

On appeal, defendant argues that his right to a unanimous jury was violated because there was a reasonable possibility that Juror 11 was excused on the basis of her views about the case. Defendant also argues that the prosecutor committed misconduct, to which defense counsel was ineffective for failing to object.  We disagree.

### A.  ISSUE PRESERVATION

Generally, for an issue to be preserved for appellate review, it must be raised in the lower court.  See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). "To preserve the issue of whether counsel rendered ineffective assistance, the defendant must move for a new trial or evidentiary hearing in the trial court or move for remand on appeal." *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022).  Otherwise, appellate review is limited to errors apparent on the record.  *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).  "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction."  *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

In this case, defendant raised his arguments regarding a unanimous jury, ineffective assistance of counsel, and due process in his postjudgment motions—including moving for a new trial or evidentiary hearing; therefore, these arguments are preserved for appellate review.  See *Metamora Water Serv, Inc*, 276 Mich App at 382; see also *In re LT*, 342 Mich App at 133. However, defendant did not object to what he alleges were instances of prosecutorial misconduct; those arguments are accordingly unpreserved.  See *Bennett*, 290 Mich App at 475.

### B.  UNANIMOUS JURY VERDICT

Defendant argues that he was denied his right to a unanimous jury verdict when the trial court replaced Juror 11 with the alternate juror.  We disagree.  "This Court reviews a trial court's decision regarding a motion for a mistrial for an abuse of discretion." *People v Caddell*, 332 Mich App 2, 377; 955 NW2d 488 (2020).  We also review for an abuse of discretion a trial court's decision to remove a juror.  *Id*. at 40.  "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *Id*. (quotation marks and citations omitted).  "The trial court's factual findings are reviewed for clear error." *Id*. at 41.  "Questions whether a defendant was denied a fair trial, or deprived of his liberty without due process of law, are reviewed de novo." *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."  US Const, Am VI.  This means that the "jury must reach a unanimous verdict in order to convict." *Ramos v Louisiana*, 590 US 83, 90-92; 150 S Ct 1390; 206 L Ed 2d 583 (2020).  This Sixth Amendment right to a unanimous jury verdict applies to states, as incorporated under the Fourteenth Amendment, US Const, Am XIV.  *Id*. at 93.  Additionally, the Michigan Constitution protects criminal defendants' rights to a unanimous jury.  Const 1963, art 1, § 14.  See *Caddell*, 332 Mich App at 36 n 4.  The Michigan Court Rules also require that "[a] jury must be unanimous." MCR 6.410(B).

"When a jury indicates it cannot reach a unanimous verdict, a trial court may give a supplemental instruction . . . to encourage the jury to continue deliberating." *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019); see also M Crim JI 3.12. "The goal of such an instruction is to encourage further deliberation without coercing a verdict." *Walker*, 504 Mich at 277. "[A]fter a deadlocked-jury instruction is provided and the jury has been unable to agree, a court may still require the jury to continue deliberations and may give or repeat an instruction." *Caddell*, 332 Mich App at 39 (quotation marks and citations omitted).

"A mistrial may be granted if a jury is unable to reach a verdict." *Id*. at 37. "A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id*. A trial court has discretion to remove a juror "[s]hould any condition arise during the trial of the cause which in the opinion of the trial court justifies the excusal of any of the jurors so impaneled from further service . . . ." MCL 768.18(1). MCR 6.411 authorizes a trial court to impanel and retain additional jurors. "If an alternate juror replaces a juror after the jury retires to consider its verdict, the court shall instruct the jury to begin its deliberations anew." MCR 6.411.

Although "a defendant has a fundamental interest in retaining the composition of the jury as originally chosen, he has an equally fundamental right to have a fair and impartial jury, made up of persons able and willing to cooperate . . . ." *People v Tate*, 244 Mich App 553, 562; 624 NW2d 524 (2001). "Removal of a juror under Michigan law is therefore at the discretion of the trial court, weighing a defendant's fundamental right to a fair and impartial jury with his right to retain the jury originally chosen to decide his fate." *Id*. Physical ailments and medical issues may qualify as a condition that justifies the excusal of a juror under MCL 768.18(1) and MCR 6.411. *Id*. at 556-557, 560-562; *People v Dry Land Marina, Inc*, 175 Mich App 332, 324, 326; 437 NW2d 391 (1989).

A trial court must bear in mind its duties when investigating an issue involving jury deliberation:

> The trial court's duty to ensure that the jury's deliberations remain secrete while also ensuring that jurors obey instructions and adhere to their oath greatly complicates the trial court's task in determining whether to remove a juror during deliberations. Nevertheless, it is a task that must be performed, and only the trial court can perform this function through a careful investigation of the circumstances[.]

> * * *

> This investigation must be carefully circumscribed to protect the secrecy of deliberations, and to protect the defendant's state constitutional right to a unanimous verdict, but not so limited that it would preclude a fair determination of whether a juror is deliberating as required by law. [*Caddell*, 332 Mich App at 46-47.]

Additionally, removal of a juror is improper if there is "any reasonable possibility" that the juror's views on the case formed the basis for removal. *Id*. at 49-53 (citation omitted).

In this case, defendant argues that Juror 11 was improperly dismissed, because there was a reasonable possibility that her views prompted her dismissal and the trial court should have conducted a further investigation. We disagree.

The condition for which Juror 11 requested to be excused was a medical or physical ailment that she identified as a panic attack. See *Tate*, 244 Mich App at 556-557, 560-562. When asked directly whether she physically or mentally could continue deliberating, Juror 11 said that she could not continue due to this condition. See *Dry Land Marina, Inc*, 175 Mich App at 326. Juror 11 also made the initial request for her removal, unlike in *Caddell*, 322 Mich App at 34-36, in which the other eleven jurors inquired whether a juror could be removed for not participating in deliberations. The circumstances as a whole support the conclusion that Juror 11's removal was based on her inability to continue deliberating, not her views on the case. *Id*. at 49-53.

Further, the record shows that the trial court investigated Juror 11's request in a manner that balanced the privacy of jury deliberations with the trial court's duty to ensure that the jury was following its obligations. See *id*. at 46-47. "[T]rial courts have always been the gatekeepers for protecting the secrecy of jury deliberations," and "must always be cautious not to intrude on the secrecy of the jury's deliberations." *Id*. at 43, 44 (quotation marks and citation omitted). However, the trial court must also ensure that the jury follows its obligations. *Id*. The trial court initially attempted to satisfy these competing concerns by reading the deadlocked-jury instruction twice when the jury indicated that it was not able to reach a verdict. See M Crim JI 3.12; *Walker*, 504 Mich at 276-277. When the deadlock continued, and Juror 11 made her request, the trial court properly investigated the nature of that circumstance without probing into the details of the jury's deliberations. See *Caddell*, 332 Mich App at 46-47. The trial court's investigation concerned the nature of Juror 11's mental-health issue, whether she felt mentally and physically capable of deliberating further, and whether she could generally "continue engaging in communications and conversations about the case with the other jurors." Although defendant argues that the trial court should have probed further to determine whether Juror 11's panic attack was caused specifically by her views on the case as a holdout juror, the trial court adequately determined that Juror 11's health issue incapacitated her from continuing as a qualifying condition under MCL 768.18(1) and MCR 6.411; further questioning risked intruding into the secrecy of the jury's deliberations. See *Caddell*, 332 Mich App at 43, 44; *Tate*, 244 Mich App at 556-557, 560-562. Moreover, defendant has not elaborated regarding what questions the trial court should have asked that would have been permissible and insightful regarding defendant's concerns and claims. We conclude that the trial court did not abuse its discretion when investigating Juror 11's request for removal. *Caddell*, 332 Mich App at 40.

Additionally, although defendant argues that the trial court should have considered a later affidavit from Juror 11 when deciding defendant's postjudgment motions, MRE 606(b) limits the trial court's capacity to hear testimony—such as Juror 11's affidavit—about jury deliberations. Defendant fails to demonstrate how Juror 11's affidavit at an evidentiary hearing would qualify under the few limited exceptions to MRE 606(b) that otherwise expressly prohibit a juror's affidavit regarding jury deliberations. See MRE 606(b)(2). The trial court did not err by declining to consider Juror 11's affidavit.

Finally, the trial court properly replaced Juror 11 with an alternate juror after confirming that the juror had not discussed the case or conducted any independent research. Because the trial

court did not abuse its discretion by excusing Juror 11 and subsequently replacing her with the alternate juror, the reconstituted, 12-member jury's unanimous verdict did not violate defendant's right to unanimous verdict. See MCR 6.410(B), MCR 6.411; see also *People v Cooks*, 446 Mich 503, 510-511; 521 NW2d 275 (1994).

For these reasons, the trial court did not abuse its discretion by dismissing Juror 11, replacing her with the alternate juror, and denying defendant's motion for a mistrial or evidentiary hearing. See *Caddell*, 332 Mich App at 37, 40. Nor did the trial court violate defendant's right to a unanimous jury verdict. See *Steele*, 283 Mich App at 478; see also *Cooks*, 446 Mich at 510-511.

## C. PROSECUTORIAL ERROR[1]

Defendant also argues that the prosecution committed several errors that denied him the right to a fair trial. We disagree. We review preserved claims of prosecutorial error de novo to determine whether the defendant was denied a fair trial. *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Reversal is required "if it appears more likely than not that the error was outcome-determinative." *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016). This Court reviews unpreserved issues of prosecutorial error for plain error. *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019). "[U]nder the plain error rule, three requirements must be met: 1) [the] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"It is the duty of the public prosecutor to see that the person charged with crime receives a fair trial . . . . [The prosecutor's] methods to procure conviction must be such as accord with the fair and impartial administration of justice[.]" *People v Richardson*, 489 Mich 940, 940 (2011) (quotation marks and citation omitted). "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Dobek*, 274 Mich App at 63. See also *Darden v Wainwright*, 477 US 168, 181; 106 S Ct 2464; 91 L Ed 2d 144 (1986). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66.

"Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation

---

[1] This Court has noted that while "the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, . . . these claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015)." In this case, the majority of defendant's allegations involve conduct that, even if error, would not rise to the level of professional misconduct. Accordingly, we use the term "prosecutorial error" in reference to defendant's claims, and our quotation of caselaw using the term "prosecutorial misconduct" should be understood as including claims of prosecutorial error.

-6-

marks and citation omitted). See also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000). Therefore, this Court will not "find error requiring reversal if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Williams*, 265 Mich App 68, 71; 692 NW2d 722 (2005).

## 1. HEARSAY

Defendant argues that the prosecution erred in its opening statement by reciting inadmissible hearsay. We agree that the statements repeated by the prosecution would have been hearsay if they had been admitted as evidence. However, as the jury was properly instructed regarding the fact that attorney statements are not evidence, reversal is not required.

The definition of "hearsay" is provided in MRE 801(c), as follows:

"Hearsay" means a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

"Hearsay is inadmissible unless a recognized exception applies. MRE 802." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 538; 775 NW2d 857 (2009).

In this case, the challenged statements from the prosecution concerned JB's conversations with his mother and with the interviewer at the Children's Advocacy Center in 2021. The prosecutor's comments about the content of JB's conversations with his mother and the forensic interviewer would have been hearsay, had the prosecutor been testifying as a witness. See MRE 801(c). Nor do these statements qualify under the exceptions provided in MRE 803, MRE 803A, and MRE 804. See *Mesik*, 285 Mich App at 538. However, as the jury was instructed, the statements of attorneys during a trial are not evidence, and therefore cannot be hearsay. See *Id*. at 541 ("Although the prosecutor's questions were, as noted, misleading and improper, the prosecutor's questions are not evidence and therefore cannot be hearsay."). Nonetheless, the prosecution is not permitted to "argue the effect of testimony that was not entered into evidence at trial." *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 558 (1994). The prosecution therefore erred to the extent it made reference to statements that were never introduced into evidence.

We conclude that any error in the prosecution's opening statement does not require reversal, because defendant has not demonstrated prejudice. See *Carines*, 460 Mich at 763. The statements occurred briefly at the opening of trial. There was ample evidence to support defendant's conviction, including JB's detailed testimony and corroborating testimony from his mother and aunt. See *People v Roscoe*, 303 Mich App 633, 642; 846 NW2d 402 (2014). Further, the jury was instructed before and after the trial to not treat opening statements as evidence and was told that "[e]vidence includes only the sworn testimony of the witnesses and the exhibits admitted into evidence." See *Zitka*, 335 Mich App at 348. Jurors are presumed to follow instructions, and instructions presumably "cure most errors." *Id*. Therefore, this error did not

require reversal because any "prejudicial effect of the prosecutor's comments [was] cured by a timely instruction." *Williams*, 265 Mich App at 71.

## 2. WITNESS CREDIBILITY

Defendant also argues that the prosecution erred by bolstering JB's credibility; specifically, that the prosecution in its opening statement implied special knowledge about the case regarding JB's forensic interview. We disagree that reversal is required.

"A prosecutor may not vouch for the credibility of a witness by conveying to the jury that he has some special knowledge that the witness is testifying truthfully." *Clark*, 330 Mich App at 434. "The prosecutor may, however, argue from the facts that a witness is worthy of belief." *Id*.

In this case, a recording of the forensic interview was not admitted as evidence at trial. Therefore, as discussed, the prosecution's references to the content of the interview in his opening statement were improper. *Mesik*, 285 Mich App at 538. The prosecution's recounting of JB's statements to the interviewer could arguably have bolstered JB's credibility as reflecting prior consistent statements. See *Rodriguez*, 251 Mich App at 31 (holding that the prosecution erred by refreshing a witness's memory of "prior statements made to [the prosecutor] and other police officers" when those statements were not admitted into evidence). However, a curative instruction would likely have cured the error if such had been requested. *Id*.; see also *Williams*, 265 Mich App at 71. In any event, the jury was instructed that the attorneys' opening statements were not evidence. Defendant had not demonstrated plain error requiring reversal.

## 3. "VICTIM"

Defendant also argues that the prosecution erred by referring to JB using the term "victim." We disagree.

MCL 750.520a(s) defines a "victim," as "the person alleging to have been subjected to criminal sexual conduct." The prosecution is permitted to refer to a complainant as a victim in a criminal sexual conduct case because this language was expressly "codified by our Legislature . . . ." *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 18. Additionally, there was no reason to conclude that defendant received an unfair trial because the prosecution occasionally referred to the complainant as a "victim" because "even to a layperson on the jury, the clear basis for maintaining the criminal proceedings is the fact that the prosecution believes that the complainant actually is 'the victim.' " *Id*.

Given that the prosecution was permitted, by MCL 750.520a(s), to refer to JB as the victim, defendant has failed to demonstrate plain error affecting his substantial rights. See *id*.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his trial counsel was ineffective for failing to challenge the alleged prosecutorial errors discussed above. We disagree. "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear

error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

According to the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." US Const, Am VI. "[T]he right to counsel is the right to the *effective* assistance of counsel." *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks and citation omitted; emphasis added). "The right to the effective assistance of counsel is incorporated to the states by the Due Process Clause of the Fourteenth Amendment." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Moreover, the Michigan Constitution enumerates this right: "In every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense . . . ." Const 1963, art 1, § 20.

"Defense counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Vaughn*, 491 Mich at 670 (quotation marks and citation omitted). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). For the first prong, a reviewing court must "affirmatively entertain the range of possible reasons" or strategies that counsel may have had for his or her conduct. *Vaughn*, 491 Mich at 670 (quotation marks and citation omitted). Defense counsel is given "wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Ericksen*, 288 Mich App at 201 (quotation marks and citation omitted). For the second prong, a defendant can show prejudice if " 'there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.' " *Vaughn*, 491 Mich at 671, quoting *Strickland*, 466 US at 694.

In the present case, as stated, some of the prosecution's opening-statement comments were improper; an objection to these statements may well have been sustained. See *Vaughn*, 491 Mich at 675. Nor do we discern a possible trial strategy in defense counsel's failure to object to these statements. See *Walker*, 497 Mich at 894; see also *Trakhtenberg*, 493 Mich at 52. In fact, defense counsel later objected on hearsay grounds when the prosecution asking JB to recount the details of his conversation to his mother. It is certainly arguable that defense counsel's failure to object to these statements was objectively unreasonable. See *Walker*, 497 Mich at 894.

But even if defense counsel's lack of objection was objectively unreasonable, defendant cannot show defense counsel's error was prejudicial by impacting the outcome of trial. See

*Vaughn*, 491 Mich at 671. As previously discussed, the prosecution's error in this respect was not prejudicial in light of the ample evidence on the record and the jury's instruction. See *Roscoe*, 303 Mich App at 642. Therefore, defendant cannot show that defense counsel's failure to object to the prosecutor's hearsay statements during opening remarks was outcome-determinative. See *Vaughn*, 491 Mich at 671.

Regarding defendant's other allegations of prosecutorial error, such as the use of the word "victim," defense counsel was not ineffective for failing to raise a futile objection. See *Ericksen*, 288 Mich App at 201. For these reasons, defendant was not denied his right to the effective assistance of counsel. See *id*.

## E. CUMULATIVE ERROR

Defendant also argues that the cumulative effect of the errors against him require reversal, even if each individual error does not, and further argues that the errors deprived him of a fair trial. We disagree. We review claims of cumulative error "to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id*.

"It is true that the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *LeBlanc*, 465 Mich at 591. However, if "the areas in which there were errors or arguable errors related to defendant's trial were of little consequence," then reversal "is not warranted on the basis of cumulative error." *People v Cooper*, 236 Mich App 643, 660; 601 NW2d 409 (1999).

Defendant's claim is without merit for two reasons. First, to succeed on a claim of cumulative effect, there necessarily must be more than one error. See *LeBlanc*, 465 Mich at 591. Because only one of defendant's assertions was a clear error—the prosecutor's impermissible opening statements—defendant cannot establish a claim of cumulative error. See *id*. Second, even if defendant had established that more than one error had occurred, "fairly minor instances of prosecutorial misconduct" do not generally amount to cumulative error so as to warrant reversal. *Dobek*, 274 Mich App at 107. Given the lack of prejudice from the one error alongside the other evidence on the record, defendant fails to demonstrate how his allegations of prosecutorial error— and related ineffective assistance—culminate in an error warranting reversal. See *id*.

## III. SENTENCING ISSUES

Defendant argues that mandatory lifetime SORA registration and LEM are cruel and/or unusual punishments. He also argues that LEM is an unreasonable search in violation of the Fourth Amendment. We disagree.

This Court reviews de novo questions of constitutional law. *LeBlanc*, 465 Mich at 579. "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011) (quotation marks and citations omitted). "We review for clear

error the trial court's factual findings" to the extent that the trial court made findings in its application of the law. *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). A trial court's factual findings "must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

## A. CRUEL AND/OR UNUSUAL PUNISHMENT

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments," and applies to all states through the Fourteenth Amendment. US Const, Ams VIII and XIV; see also *People v Sinclair*, 387 Mich 91, 150; 194 NW2d 878 (1972). The Michigan Constitution provides that "cruel or unusual punishment shall not be inflicted[.]" Const 1963, art I, § 16. Accordingly, "[i]n an appropriate case, the Michigan Constitution's prohibition against 'cruel or unusual' punishment may be interpreted more broadly than the Eighth Amendment's prohibit against 'cruel and unusual' punishment." *Carlton v Dep't of Corrections*, 215 Mich App 490, 505; 546 NW2d 671 (1996). Therefore, if a statute or sentence "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Bowling*, 299 Mich App 552, 557 n 3; 830 NW2d 800 (2013) (quotation marks and citations omitted).

Penal statutes "are presumed to be constitutional," such that this Court's interpretation of these statutes should be construed as constitutional, "unless its unconstitutionality is clearly apparent." *Benton*, 294 Mich App at 203. "A party challenging the constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). For a challenge involving allegedly cruel or unusual punishment, the constitutional prohibition on such a punishment "requires that there first be a punishment imposed" outright. *Id*. at 483 (quotation marks and citation omitted). Next, "[s]uch a challenge can be brought in one of two ways: by either a facial challenge of an as-applied challenge." *Id*. (quotation marks and citation omitted). "A facial challenge involves a claim that there is no set of circumstances under which the enactment is constitutionally valid, while an as-applied challenge considers the specific application of the facially valid law to individual facts." *People v Adamowicz*, 346 Mich App 213, 220; 12 NW3d 35 (2023) (quotation marks and citations omitted); see also *People v Johnson*, 336 Mich App 688, 692; 971 NW2d 692 (2021) (quotation marks and citations omitted).

An as-applied challenge to the constitutionality of a statute "alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Id*. (quotation marks and citations omitted). For an as-applied challenge to the constitutionality of a statutory punishment, "this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Hallak*, 310 Mich App 555, 571-572; 873 NW2d 811 (2015) (quotation marks and citations omitted), rev'd in part on other grounds 499 Mich 879 (2016). "[T]he 'dominant test' is the proportionality question, which is 'whether the punishment is so excessive that it is completely unsuitable to the crime.' " *Id*. at 572 (citations omitted). "The goal of rehabilitation is also a consideration." *Id*.

We address these considerations by considering the following four factors:

> (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goals of rehabilitation. [*Jarrell*, 344 Mich App at 484 (quotation marks and citations omitted.)]

These factors aim to establish a balance among protecting the public from further injury, promoting deterrence and recidivism, and protecting an offender's rehabilitative potential. *Hallak*, 310 Mich App at 572.

## 1. SORA REGISTRATION

In 1994, the Michigan Legislature enacted SORA for the purpose of aiding

> law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses as serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a danger. [MCL 28.721a.]

Among the offenses subject to the act are "Tier III offense[s]," which include violations under MCL 750.520b. MCL 28.722(v)(iv). According to MCL 28.725(13), "[e]xcept as otherwise provided in this section and section 8c,[ ] a tier III offender shall comply with this section for life."

As stated, to demonstrate cruel or unusual punishment, there must first be a punishment imposed. *Jarrell*, 344 Mich App at 483. But this Court has recently held that registration under the amendments to the 2021 SORA do not impose a punishment for sexual offenders who were convicted of sexual offenses. *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 12; see also *In re Ryan Douglas Harder*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368645); slip op at 10-11. Because defendant's registration requirement arises under the 2021 SORA amendments and mandatory SORA registration under those amendments is not punishment, it cannot be considered cruel or unusual punishment. *In re Ryan Douglas Harder*, ___ Mich App at ___; slip op at 11. Therefore, defendant's claim regarding SORA registration fails. See *id*.

## 2. LIFETIME ELECTRONIC MONITORING

According to MCL 750.520b(2), punishment for a conviction of first-degree criminal sexual conduct includes, in pertinent part, as follows:

(b) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years.

* * *

(d) In addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring under section 520n.

As provided in MCL 750.520n(1), "A person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring as provided under section 85 of the corrections code of 1953[.]" The Michigan Supreme Court has clarified that LEM under MCL 750.520n(1) is mandatory because "[t]he use of the directive 'shall sentence' indicates that the Legislature intended to make lifetime electronic monitoring part of the sentence itself." *People v Cole*, 491 Mich 325, 336; 491 NW2d 497 (2012).

In *Cole*, 491 Mich at 335-337, the Michigan Supreme Court held that mandatory LEM "is part of the sentence [for first and second-degree criminal sexual conduct] itself," which functions as "a direct consequence of a plea." Therefore, mandatory LEM, unlike SORA registration, is a punishment. *Id*. at 336; see also *Hallak*, 310 Mich App at 571. Accordingly, defendant in the present case satisfies the first requirement of a cruel-or-unusual challenge to MCL 750.520n. See *Jarrell*, 344 Mich App at 483.

A trial court does not have discretion over whether to impose LEM, given the plain language of the statute. *People v Comer*, 500 Mich 278, 292, 300; 901 NW2d 553 (2017). Defendant argues that MCL 750.520n is facially unconstitutional because the mandatory punishment "does not account for any individual factors, such as risk level and rehabilitation." This Court has addressed facial challenges to MCL 750.520n and has determined that there are circumstances under which MCL 750.520n is constitutionally valid. See *Johnson*, 336 Mich App at 693; *Hallak*, 310 Mich App at 573-577. Accordingly, defendant's facial challenge lacks merit. See *Johnson*, 336 Mich App at 693; see also *Hallak*, 310 Mich App at 577.

We also reject defendant's as-applied challenge, for similar reasons as those stated by this Court in *Hallak*, 310 Mich App at 573-577. Defendant was convicted of CSC-I and given a term-of-years sentence when he could have been sentenced to life imprisonment. Given this Court's holding in *Hallak*, 310 Mich App at 574-575, we conclude that LEM for a second-degree criminal sexual conduct offense is not disproportionate. We do not find that the harshness of LEM outweighs the severity of defendant's first-degree offense. This Court has also noted that Michigan and other states impose LEM for other serious crimes and criminal sexual conduct; comparative penalties support the conclusion that LEM for defendant is proportionate. See *id*. at 575-577. For these reasons, LEM is not unconstitutional as applied to defendant. See *Hallak*, 310 Mich App at 573-577.

## B. UNREASONABLE SEARCH

The Fourth Amendment to the United States Constitution protects people's rights "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." US Const, Am IV. "Similarly, the Michigan Constitution of 1963 provides that '[t]he person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures . . . .' " *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022), quoting Const 1963, art 1, § 11. "Absent a compelling reason, Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment." *Brcic*, 342 Mich App at 277.

"As indicated by the Fourth Amendment's text, reasonableness is always the touchstone of the Fourth Amendment analysis." *People v Hughes*, 506 Mich 512, 524; 958 NW2d 98 (2020) (quotation marks and citation omitted). "Whether a search is unreasonable is a question of law." *Hallak*, 310 Mich App at 579. The test for the reasonableness of a search considers the totality of the circumstances. *Id*. "The applicable test in determining the reasonableness of an intrusion is to balance the need to search, in the public interest, for evidence of criminal activity against invasion of the individual's privacy." *People v Chowdhury*, 285 Mich App 509, 516; 775 NW2d 845 (2009) (quotation marks and citations omitted).

Electronic monitoring constitutes a search under the federal and state Constitutions. See *Hallak*, 310 Mich App at 579. However, the search is not an unreasonable one. There is a strong public interest in punishing and deterring sexual offenders alongside protecting society from further sexual violence. *Hallak*, 310 Mich App at 580-581. LEM is reserved for offenders against children younger than 13 years of age; therefore, LEM "not only acts as a strong deterrent, but also assists law enforcement efforts to ensure that these individuals . . . do not frequent prohibited areas" such as elementary schools and other locations where children frequent. *Id*. at 580. "[P]arolees and probationers have a lower expectation of privacy, even in the comfort of their own homes, than the average law-abiding citizen." *Id*. at 581. Because such offenders have reduced privacy expectations, but they are still allowed to work, travel, and move about relatively freely, the balance tips in favor of concluding that LEM is a reasonable search. *Id*. Additionally, the fact that minor victims of criminal sexual conduct "are often harmed for life" makes LEM a reasonable response to "the strong public interest in the benefit of monitoring" such offenders compared to the "minimal impact on defendant's reduced privacy interest." *Id*.

The defendant in *Hallak*, 310 Mich App at 581, was convicted of second-degree criminal sexual conduct. Accordingly, this Court's reasoning and conclusions about public interest and privacy readily apply to defendant, a more severe offender. See *id*. Defendant has provided no facts or circumstances that are unique to him that would favorably distinguish his case from *Hallak*,

310 Mich App at 560-566, 581. Therefore, LEM for defendant does not amount to an unreasonable search, and MCL 750.520b(2) is not unconstitutional, either facially or as applied to defendant. See *id*. at 581; *Johnson*, 336 Mich App at 692.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron