*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

THOMAS JAMES STANSBURY,

Defendant-Appellant.

UNPUBLISHED
May 21, 2025
12:05 PM

No. 365894
Calhoun Circuit Court
LC No. 2021-000533-FH

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of second-degree criminal sexual conduct, MCL 750.520c. Defendant was sentenced to serve 57 months to 15 years in prison and was subject to lifetime registration and electronic monitoring ("LEM") under the Sex Offenders Registration Act ("SORA"), MCL 28.721 *et seq*., upon his release. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Between approximately 2013 through 2018, the victim lived with her younger sister, her mother, and defendant. The victim's mother struggled with substance abuse and would frequently leave the victim alone with defendant. In 2013, when the mother was not present at the home, defendant asked the victim to lie on the couch with him, during which time he sexually assaulted the victim. The victim was eight years old when the first assault occurred, and defendant assaulted the victim on multiple occasions during this period. In 2015, Children's Protective Services ("CPS") was sent to investigate defendant. During the investigation, a CPS worker asked the victim whether defendant touched her in a sexually inappropriate manner. The victim denied any sexual abuse, but later testified during defendant's preliminary examination that the denial was the result of her mother's coercion and abuse.

A subsequent CPS investigation began in 2018, resulting in an arrest warrant being issued for defendant. As noted, defendant was convicted of one count of second-degree criminal sexual conduct, but was acquitted of one count of indecent exposure, MCL 750.355a. After defendant was sentenced, he moved for a new trial, arguing that a pretrial order obtained by his trial counsel,

-1-

which precluded the prosecution from introducing other-acts evidence, prejudiced defendant from eliciting crucial testimony from the victim, specifically her inconsistent statement in 2015 denying the sexual abuse. After an evidentiary hearing in which defendant's trial counsel testified regarding the reasons for her decisions, the trial court denied the motion. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that his constitutional right to effective assistance of counsel was violated because the victim's prior inconsistent statements were not presented to the jury as the result of trial counsel's failure to elicit the testimony. Defendant claims that trial counsel's assertion that avoiding such testimony was strategic was insufficient because this was a case involving only testimonial evidence and the victim's prior inconsistent statements were not presented to the jury. We disagree.

## A. STANDARDS OF REVIEW

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted).

## B. ANALYSIS

The right to the effective assistance of counsel is guaranteed by the Michigan and United States constitutions. US Const Am VI; Const 1963, art 1, § 20. "To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010).

Under the first prong, a reviewing court must "affirmatively entertain the range of possible reasons" or strategies that counsel may have had for her decisions. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Defense counsel is given "wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. Under the second prong, a defendant demonstrates prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Vaughn*, 491 Mich at 671 (quotation marks and citation omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich. 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted).

Before trial, the prosecution moved to introduce other-acts evidence regarding to domestic violence incidents involving defendant that were outlined in a previous CPS report. Defendant moved in limine to preclude the admission of this evidence, which the trial court granted, concluding that domestic violence between defendant and the victim's mother was not relevant. The court stated, however, that "if it becomes relevant after cross-examination, its potential that, depending on what doors [defense counsel] decides to go through with her cross-examination, that it may become relevant." During the evidentiary hearing on defendant's motion for a new trial, defense counsel stated that she developed a strategy to impeach the victim through other inconsistencies in her testimony and through defendant's testimony, without opening the door for the prosecution to bring other-acts evidence to the jury. In particular, defense counsel's fear was that if she questioned the victim regarding her denial of abuse in 2015, it would open the door to the prosecution to introduce evidence as to why the victim would change her testimony, which purportedly was the result of defendant's other acts of domestic violence.

In *Trakhtenberg*, 493 Mich at 54, the Michigan Supreme Court concluded that defense "[c]ounsel's failure to cross-examine [the complainant's mother] and adequately impeach the complainant was a result of counsel's unreasonable decision to forgo any investigation in the case." This conclusion was based, in part, on the fact that defense counsel admitted that "had she discovered the pertinent information, she would have (1) impeached the complainant with her additional inconsistent statements regarding the number of times defendant allegedly forced her to touch him . . . ." *Id*. at 54-55. Unlike in *Trakhtenberg*, however, defense counsel in this case was aware of the victim's inconsistent statements, and consciously and strategically chose to avoid those made during the 2015 investigation.

Defendant argues that because this case was a credibility contest between the victim and defendant, defense counsel was ineffective for not impeaching the victim with her previous denial in 2015. We disagree. In *People v Douglas*, 496 Mich 557, 588 n 12; 852 NW2d 587 (2014), the Michigan Supreme Court concluded that defense counsel's decision to not impeach the victim in a credibility contest with inconsistencies between her preliminary examination testimony and her trial testimony was not ineffective assistance of counsel because defense counsel's strategy to not press the very young victim was a reasonable decision. As in *Douglas*, defense counsel's strategy in this case to not directly confront the victim about her denial during the 2015 CPS investigation— to avoid opening the door to other-acts evidence that would harm defendant's position—was reasonable despite the case being a credibility contest involving allegations of criminal sexual conduct. See *id*.

Because defendant cannot show that trial counsel's performance fell below an objective standard of reasonableness when she chose not to elicit testimony from the victim about her statements in 2015, he has failed to carry his burden to show that he was not afforded the effective assistance of counsel. See *Walker*, 497 Mich at 895.

III. DUE PROCESS

Next, defendant argues that the trial court's pretrial order granting his motion in limine violated his right to due process because it precluded his defense counsel from impeaching the victim with her prior inconsistent statements regarding whether defendant sexually assaulted her. We disagree.

## A. STANDARDS OF REVIEW

"Questions whether a defendant was denied a fair trial, or deprived of his liberty without due process of law, are reviewed de novo." *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009). We also review de novo whether a defendant was denied the constitutional right to present a defense. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). "The admissibility of other acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion." *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).

## B. ANALYSIS

"Under our state and federal Constitutions, a person cannot be deprived of life, liberty, or property without due process of law." *People v Joly*, 336 Mich App 388, 399, 410; 970 NW2d 426 (2021). "In the context of criminal proceedings, the denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." *Id*. (quotation marks and citation omitted). "A defendant has a constitutionally guaranteed right to present a defense . . . . But this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (quotation marks and citations omitted). A trial court abuses its discretion when an order granting a motion in limine is applied overbroadly to preclude other relevant evidence. *Id*. at 365-366.

In the present case, the trial court's order "granted" defendant's "motion in limine to exclude other acts pursuant to MCL 768.27b and MRE 404b . . . ." The order prevented the prosecution from introducing the other-acts evidence it identified in its notice of intent, which it claimed was relevant to show "why [the victim] was afraid of [defendant], why she was afraid to tell her own mother and why this did not come out sooner . . . ." As previously noted, the trial court stated on the record that while the prosecution would not be able to introduce the evidence on direct, "if it becomes relevant after cross-examination, its potential that, depending on what doors [defense counsel] decides to go through with her cross-examination, that it may become relevant." The order itself was not overbroad because, on its face, it only granted what defendant sought in the first place—precluding the prosecution from admitting evidence of defendant's prior bad acts. See *People v Szalma*, 487 Mich 708, 710; 790 NW2d 662 (2010) (stating that a party cannot create an error in the trial court and then rely on that error as a basis for reversal).

To the extent that the trial sustained the prosecution's objections to questions posed by defense counsel solely on the basis of the pretrial order, it was error.[1] The order explicitly only applied to the prosecution and did not prevent defendant from presenting any evidence. However, the justification for the pretrial order was defendant's argument that such evidence was irrelevant

---

[1] It is not clear from the record on what basis the trial court sustained a number of the prosecution's objections; however, the record does show that defendant was precluded from testifying regarding the victim's 2015 denial on the basis of the pretrial order.

to the charges asserted against defendant. In other words, if the evidence would be irrelevant when presented by the prosecution, it would also be irrelevant if presented by the defense. The charges against defendant stemmed from conduct that occurred in 2017 or 2018; thus, the victim's denials concerning defendant's alleged sexual abuse in 2015 were not relevant to those charges. Thus, while the trial court may have articulated that it was sustaining the prosecution's objections on the basis of the pretrial order, it is clear that the trial court's underlying justification for those evidentiary decisions was on the basis of relevance. The alleged assault in 2015 was not charged conduct and was, therefore, irrelevant to the charges that related to conduct that occurred in 2017 or 2018 that were pending before the court. Under Michigan's harmless-error rule, reversal is required for nonstructural errors only if the error was prejudicial. *People v Lukity*, 460 Mich 484, 491-492; 596 NW2d 607 (1999). An error is prejudicial if it "undermine[s] the reliability of the verdict." *People v Mateo*, 453 Mich 203, 211; 551 NW2d 891 (1996). Because the trial court's decisions to sustain the prosecution's objections was proper on the basis of relevance, defendant cannot show that he was harmed by the trial court's error.

## IV. SORA

Lastly, defendant contends on appeal that his lifetime SORA registration and the LEM violates his right to be free from cruel or unusual punishment. Defendant also argues that the LEM violates the constitutional prohibition on unreasonable searches and seizures. We disagree.

## A. STANDARDS OF REVIEW

We review de novo questions of constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011) (quotation marks and citations omitted). "We review for clear error the trial court's factual findings" to the extent that the trial court made findings in its application of the law. *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). A trial court's factual findings "must be supported by a preponderance of the evidence." *Hardy*, 494 Mich at 438.

To preserve issues concerning the constitutionality of a sentence, a defendant must advance such claims before the trial court. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Because defendant did not raise these issues before the trial court, the issues are not preserved. See *id.* "[A]n unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). "[U]nder the plain error rule, three requirements must be met: 1) [the] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## B. ANALYSIS

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments," which applies to all states through the Fourteenth Amendment. US Const, Ams VIII and XIV. See *People v Sinclair*, 387 Mich 91, 150; 194 NW2d 878 (1972). The Michigan Constitution has also adopted this language—although the Michigan Constitution

uses a disjunction rather than a conjunction—by declaring that "cruel or unusual punishment shall not be inflicted[.]" Const 1963, art I, § 16. Accordingly, "[i]n an appropriate case, the Michigan Constitution's prohibition against 'cruel or unusual' punishment may be interpreted more broadly than the Eighth Amendment's prohibition against 'cruel and unusual' punishment." *Carlton v Dep't of Corrections*, 215 Mich App 490, 505; 546 NW2d 671 (1996). Therefore, if a statute or sentence "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Bowling*, 299 Mich App at 557 n 3 (quotation marks and citations omitted). "A party challenging the constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022).

In 1994, the Michigan Legislature enacted SORA for the purpose of assisting

> law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a danger. [MCL 28.721a.]

Among the offenses subject to the act are "Tier III offense[s]," which include violations under MCL 750.520c. MCL 28.722(v)(*v*). Under MCL 28.725(13), "[e]xcept as otherwise provided in this section and section 8c, a tier III offender shall comply with this section for life."

To demonstrate cruel or unusual punishment, there must first be a punishment imposed. *Jarrell*, 344 Mich App at 483. We have already concluded that registration under the amendments to the 2021 SORA does not impose a punishment for defendants who were convicted of sexual offenses. *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 12; see also MCR 7.215(C) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."). Because mandatory SORA registration is not a punishment, it cannot be considered cruel or unusual punishment. *Kiczenski*, ___ Mich App at ___; slip op at 11. Accordingly, the trial court did not plainly err by applying the statute's requirement for lifetime SORA registration. See *id*.

Defendant also argues that mandatory LEM is an unconstitutionally cruel and/or unusual punishment. We disagree.

Under MCL 750.520c(2):

> (2) Criminal sexual conduct in the second degree is a felony punishable as follows:

> (a) By imprisonment for not more than 15 years.

> (d) In addition to any other penalty specified in subdivision (a), the court shall sentence the defendant to lifetime electronic monitoring under section 520n if

the violation involved sexual conduct committed by an individual 17 years of age or older against an individual less than 13 years of age.

As provided in MCL 750.520n(1), "A person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring as provided under section 85 of the corrections code of 1953[.]" LEM under MCL 750.520n(1) is mandatory because "[t]he use of the directive 'shall sentence' indicates that the Legislature intended to make lifetime electronic monitoring part of the sentence itself." *People v Cole*, 491 Mich 325, 336; 491 NW2d 497 (2012). Unlike lifetime registration under SORA, LEM is recognized as a punishment under Michigan precedent. *Id*. at 335-337.

Defendant's facial challenge to MCL 750.520n fails because we have already determined that there are circumstances in which MCL 750.520n is valid. See *People v Hallak*, 310 Mich App 555, 573-577; 873 NW2d 811 (2015), rev'd in part on other grounds, 499 Mich 879 (2016). Given that a statute is presumptively constitutional, *Benton*, 294 Mich App at 203, and previous holdings by this Court regarding the same statute's constitutionality indicate that there are, in fact, circumstances in which MCL 750.520n is valid, defendant's facial challenge fails. As applied, defendant's challenge also fails, for similar reasons we articulated in *Hallak*. Given that this Court held in *Hallak*, 310 Mich App at 574-575, that LEM for a second-degree criminal sexual conduct was not disproportionate, the harshness of LEM does not outweigh the severity of defendant's identical conviction of second-degree criminal sexual conduct. This Court also noted that Michigan and other states impose LEM for other serious crimes and criminal sexual conduct; comparative penalties support the conclusion that LEM for defendant is proportionate. See *id*. at 575-577. For these reasons, LEM is not unconstitutional as applied to defendant, and the trial court did not plainly err by applying a constitutional statute's requirement for LEM. See *id*.

Defendant also argues that mandatory LEM is an unreasonable search in violation of his constitutional rights. We disagree.

The Fourth Amendment to the United States Constitution protects a person's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." US Const, Am IV. "Similarly, the Michigan Constitution of 1963 provides that '[t]he person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures . . . .' " *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022), quoting Const 1963, art 1, § 11. "Absent a compelling reason, Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment." *Brcic*, 342 Mich App at 277.

"As indicated by the Fourth Amendment's text, reasonableness is always the touchstone of Fourth Amendment analysis." *People v Hughes*, 506 Mich 512, 524; 958 NW2d 98 (2020) (quotation marks and citation omitted). "Whether a search is unreasonable is a question of law." *Hallak*, 310 Mich App at 579. The test for the reasonableness of a search considers the totality of the circumstances. *Id*. "The applicable test in determining the reasonableness of an intrusion is to balance the need to search, in the public interest, for evidence of criminal activity against invasion of the individual's privacy." *People v Chowdhury*, 285 Mich App 509, 516; 775 NW2d 845 (2009) (quotation marks and citations omitted).

There is a strong public interest in punishing and deterring sexual offenders alongside protecting society from further sexual violence. See *Hallak*, 310 Mich App at 580-581. LEM is reserved for offenders against children younger than 13 years of age; therefore, LEM "not only acts as a strong deterrent, but also assists law enforcement efforts to ensure that these individuals . . . do not frequent prohibited areas" such as elementary schools and other locations where children frequent. *Id*. at 580. Additionally, "parolees and probationers have a lower expectation of privacy, even in the comfort of their own homes, than the average law-abiding citizen." *Id*. at 581. Because such offenders have reduced privacy expectations, but they are still allowed to work, travel, and move about relatively freely, the balance tips in favor of concluding that LEM is a reasonable search. *Id*. Ultimately, because minor victims of criminal sexual conduct "are often harmed for life," LEM is a reasonable response to "the strong public interest in the benefit of monitoring" such offenders compared to the "minimal impact on defendant's reduced privacy interest." *Id*. Accordingly, the trial court did not plainly err by applying the statute's requirement for LEM.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello